In re Perle Albert SORAH, Jr., Debtor.

Karren L. SORAH, Appellant,

v.

Perle Albert Sorah, Jr., Appellee.

No. 97–6335.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 30, 1998.

Decided Dec. 22, 1998.

James W. Gardner (argued and briefed), Henry, Watz, Gardner & Sellars, Lexington, Kentucky, for Appellant.

Guy M. Graves (argued and briefed), Elizabeth S. Hughes and Samuel G. Carneal (briefed), Gess, Mattingly & Atchison, Lexington, Kentucky, for Appellee.

Before: NELSON, CLAY, and GILMAN, Circuit Judges.

GILMAN, Circuit Judge.

The United States Bankruptcy Court for the Eastern District of Kentucky discharged Karren L. Sorah's former husband, Perle Albert Sorah, from an obligation to pay her $750 per month pursuant to a state court divorce decree. The bankruptcy court found that the payments, though decreed as "maintenance" by the state court, were not actually in the nature of maintenance, and were therefore dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(5)(B). The district court affirmed. Because we find that both the bankruptcy court and the district court incorrectly applied § 523 to the facts of this case, we **REVERSE** the district court's decision and **REMAND** for entry of an order consistent with this opinion.

## I. BACKGROUND

Mr. and Mrs. Sorah were married in 1973. In 1993, Mr. Sorah was employed as an x-ray technician. He was forty-two years old and earned over $35,000 per year. Mrs. Sorah was then fifty years old and employed as a teacher's aide, earning approximately $8,000 per year. She also had rental income from property inherited from her mother. Mrs. Sorah suffers from varicose veins and thrombophlebitis that could limit the amount of work she will be able to undertake in the future.

In March of 1992, Mr. Sorah petitioned for divorce. In May of 1993, he filed a Chapter 7 bankruptcy petition. The Bell Circuit Court in Kentucky granted the divorce in November of 1993 and entered a Decree of Dissolution of Marriage. It awarded Mrs. Sorah direct payments that it designated as "maintenance" and that are structured to cease upon Mrs. Sorah's death, remarriage, or 62nd birthday, whichever first occurs. Mr. Sorah appealed the maintenance award to the Kentucky Court of Appeals, which upheld the award in 1995.

As part of his bankruptcy proceeding, Mr. Sorah then sought a ruling that his obligation to pay the $750 monthly "maintenance" payments was dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(5)(B). This section of the Bankruptcy Code discharges debts to spouses even though *designated* alimony, support, or maintenance, unless they are *actually* in the nature of alimony, support, or maintenance.

The bankruptcy court reviewed the state court record without hearing any additional proof. Based upon this review, it determined that the payments were not in fact in the

nature of maintenance, but rather were intended to punish Mr. Sorah for his alleged marital infidelity. The bankruptcy court apparently reached this conclusion based upon the following language contained in the divorce decree:

> The separation of the parties and the breakup of the marriage involved infidelity on [the] part of the Petitioner while he "frivolates", "cajoles", "Bevis and Buttheads" around in financial freedom as a result of his bankruptcy, searching for another victim. . . .

The bankruptcy court further found that the Bell Circuit Court's findings of fact regarding the parties' respective incomes and Mrs. Sorah's rental income from the inherited property were without support in the record. The bankruptcy court, however, likewise failed to provide any backup for its own findings of fact.

After concluding that the $750 monthly payments to Mrs. Sorah were actually property distributions intended to punish Mr. Sorah, the bankruptcy court discharged the obligation. Mrs. Sorah then appealed the bankruptcy court's decision to the United States District Court for the Eastern District of Kentucky. The district court found that the bankruptcy court had properly conducted an independent inquiry into whether the payments actually constituted maintenance or were, instead, a division of marital property dischargeable in bankruptcy. It thus affirmed the bankruptcy court's determination that the payments were dischargeable. Mrs. Sorah now appeals the district court's decision.

## II. ANALYSIS

### A. Standard of Review

■■■ We review the factual determination of whether an obligation constitutes nondischargeable support under the "clearly erroneous" standard. See *In re Perlin*, 30 F.3d 39, 40 (6th Cir.1994). On the other hand, the interpretation of § 523 is a legal issue that we review *de novo*. See *In re Calhoun*, 715 F.2d 1103, 1111 (6th Cir.1983) (stating that the application of the wrong legal standard, and the district court's misal-

location of the burdens of proof, would be reviewed *de novo* ).

### B. The requirements of § 523

Section 523 of the Bankruptcy Code, titled "Exceptions to discharge," provides in relevant part that debts to a former spouse are discharged, "but not to the extent that . . . such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support." 11 U.S.C. § 523(a)(5)(B). Thus, in order to be held nondischargeable in bankruptcy, an award in a divorce decree or settlement agreement must actually be in the nature of support. The inquiry that the bankruptcy court must undertake in making this determination depends upon the nature of the obligation and the language of the state court decree.

In *Calhoun*, this court held that the bankruptcy court should have engaged in an independent inquiry to determine whether a third-party debt assumption contained in a separation agreement was in the nature of support, or whether it was in actuality a division of marital property. See 715 F.2d at 1109. The court set out a three-part test that required the bankruptcy court to determine whether the award was intended as support, whether it had the effect of support in light of the recipient's present needs, and whether, even if in the nature of support, it was nonetheless unreasonable in amount. See *id.*

In *In re Fitzgerald*, 9 F.3d 517, 520 (6th Cir.1993), this court noted that the *Calhoun* standard had been too expansively applied by the bankruptcy courts, and held that the "present needs" of the non-debtor spouse should not be considered when the obligation was intended as support. The court found no cases in which direct-payment obligations that were intended as support were discharged in bankruptcy. See *id.*

■■ Distinguishing a direct payment between spouses from the third-party debt assumption addressed in *Calhoun*, the *Fitzgerald* court further said that "here the only question is whether something denominated

as alimony is really alimony and not, for example, a property settlement in disguise." *See id.* at 521. In finding that the award was alimony, and not a disguised property settlement, the court noted that the payments "were to end upon the wife's remarriage or death, another conventional restriction on alimony." *See id.* Thus *Fitzgerald* stands for the proposition that a state court's award of alimony is entitled to deference when labeled and structured as such.

■ Despite the admonition in *Fitzgerald* that bankruptcy courts should not second-guess state court alimony determinations, the bankruptcy court in the present case engaged in an independent inquiry into whether the award was actually in the nature of support, hypothesizing in particular that the Bell Circuit Court granted maintenance to Mrs. Sorah based upon its disapproval of Mr. Sorah's behavior during the marriage. We find that such an independent analysis under the circumstances of this case is inconsistent with *Fitzgerald* and fails to give proper deference to state divorce court decrees.

### C. The Bankruptcy Reform Act of 1994

In 1994, Congress amended § 523 to make most divorce-related obligations nondischargeable. *See* 11 U.S.C. § 523(a)(15). The amended section contains two exceptions: a debt is dischargeable (1) if the debtor cannot afford to pay it, or (2) if the discharge benefits the debtor more than it harms the debtor's spouse and children. *See id.* The statute, as amended, has spawned a great deal of litigation. *See* Mary Jo Newborn Wiggins, *Commentary on Bankruptcy Reform,* 4 Am. Bankr.Inst. L.Rev. 551 (1996). The Bankruptcy Reform Act does not apply to the present case, which was filed before the Act's effective date. *See* Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106 (codified as amended in scattered sections of 11 U.S.C.) ("[T]he amendments made by this Act shall not apply with respect to cases commenced under title 11 of the United States Code before the date of the enactment of this Act."). Its effect on the *Calhoun* analysis in future cases remains unclear. Because this case involves an award that bears all of the traditional indicia

of support, however, we need not discuss the extent to which § 523 as amended will affect third-party debt assumptions as dealt with in *Calhoun.*

### D. The standard applicable to awards that bear the indicia of support

#### 1. Burden on the non-debtor spouse

■ There is a saying that if something looks like a duck, walks like a duck, and quacks like a duck, then it is probably a duck. In determining whether an award is actually support, the bankruptcy court should first consider whether it "quacks" like support. Specifically, the court should look to the traditional state law indicia that are consistent with a support obligation. These include, but are not necessarily limited to, (1) a label such as alimony, support, or maintenance in the decree or agreement, (2) a direct payment to the former spouse, as opposed to the assumption of a third-party debt, and (3) payments that are contingent upon such events as death, remarriage, or eligibility for Social Security benefits.

■ An award that is designated as support by the state court and that has the above indicia of a support obligation (along with any others that the state support statute considers) should be conclusively presumed to be a support obligation by the bankruptcy court. A non-debtor spouse who demonstrates that these indicia are present has satisfied his or her burden of proving that the obligation constitutes support within the meaning of § 523, and is thus nondischargeable. *See Calhoun,* 715 F.2d at 1111 (holding that the non-debtor spouse has the burden of proving nondischargeability). The burden then shifts to the debtor spouse to demonstrate that although the obligation is of the *type* that may not be discharged in bankruptcy, its *amount* is unreasonable in light of the debtor spouse's financial circumstances.

#### 2. Debtor's rebuttal

■ Once the non-debtor spouse has established that the obligation in question has all of the indicia of support, the debtor spouse may not introduce evidence to the

contrary. In particular, a debtor spouse may not ask the bankruptcy court to assume the role of a psychological examiner, probing the state court's decision for linguistic evidence of ulterior motives. Nor may the debtor spouse introduce evidence regarding the resources, earning potential, and daily needs of the non-debtor spouse, either at the time the obligation arose or at the time of the bankruptcy proceeding. This portion of the *Calhoun* analysis is inappropriate when the state court has clearly structured the obligation as support.

■ When the obligation is so structured, the only response available to the debtor spouse is to demonstrate that the obligation is unreasonable in light of the debtor's financial circumstances. This is the third prong of the *Calhoun* test. *See* 715 F.2d at 1110. We further note that the bankruptcy court does not sit as a super-divorce court to determine the *most* reasonable level of support. Rather, it may consider evidence that the obligation is unreasonable and discharge it *to the extent* that it exceeds what the debtor can reasonably be expected to pay. Section 523 obviously places no limitation upon a state court's ability to award alimony, maintenance, or support (*see Fitzgerald,* 9 F.3d at 521), and the bankruptcy court should not second-guess the state court support award absent evidence that the burden on the debtor spouse is excessive.

### E. Application to the present case

#### 1. The Bell Circuit Court clearly expressed an intent to create a maintenance award

■ The Bell Circuit Court explicitly stated that it was awarding maintenance:

[T]his action is, in reality, an action for alimony or maintenance, an action not affected by the bankruptcy stay since it will be collected from postpetition earnings.

Furthermore, the obligation is structured as a maintenance obligation:

7. [Mr. Sorah] shall pay to [Mrs. Sorah] maintenance in the sum of $750.00 a month beginning with the month of December, 1993 and continue until death, remarriage or 62nd birthday, whichever occurs first.

The obligation at issue is contingent, because it ceases upon the occurrence of any one of the conditions stated above. It is also structured as a direct payment, not as an assumption of a third-party debt. Finally, it is denominated as "maintenance" by the state court. These factors combine to conclusively establish that the obligation is actually in the nature of support.

#### 2. The bankruptcy court erred in applying the second prong of the Calhoun test when the obligation was clearly in the nature of support

■ Because Mrs. Sorah had conclusively established that her award was in the nature of support, the bankruptcy court should not have permitted Mr. Sorah to argue that the state court had a hidden agenda to disguise the true nature of the payments. Nor should the bankruptcy court have applied the second prong of the *Calhoun* test, determining whether the obligation has the effect of maintenance in light of Mrs. Sorah's needs.

We need not explore the extent of the examination that a bankruptcy court should conduct where the indicia of a support obligation are not present, such as in third-party debt assumption cases like *Calhoun.* In light of the 1994 amendments to § 523, the remaining vitality of the distinction between divorce awards in the nature of support and those that are a division of property is in doubt. But when, as here, the award is clearly structured as support, the above analysis will apply.

#### 3. The award was not unreasonable

■ A maintenance award is still dischargeable to the extent that it exceeds the amount that the debtor spouse is reasonably able to pay. The bankruptcy court determined that the state court's findings of fact with regard to Mr. Sorah's assets and resources were without support in the record. But the bankruptcy court heard no additional proof beyond what was presented in the state court, and the decision does not provide any basis for the bankruptcy court's own conclusions to the contrary.

The Bell Circuit Court found that Mr. Sorah's assets and income enabled him to pay the $750 per month award, and the Kentucky Court of Appeals affirmed this finding. Mr. Sorah argues that these determinations do not have preclusive effect on the bankruptcy proceedings because the issue of dischargeability was not actually litigated before the Kentucky courts. Mr. Sorah's argument is misplaced, however, because the deference that bankruptcy courts owe to state divorce courts is not based upon *res judicata* principles. A bankruptcy court looks to the structure of an obligation only to determine whether it is in the nature of support. This limited inquiry, described above, takes place independently of any determination by the state court. A state court's factual findings as to the assets and income of the parties, however, are entitled to deference, especially where, as here, the debtor spouse did not present any evidence that was not before the Kentucky courts.

Finally, the award of $750 per month does not appear to be unreasonable in light of the parties' circumstances. Because Mr. Sorah did not meet his burden of demonstrating that the award was unreasonable, it should not have been discharged.

### III. CONCLUSION

For the reasons stated above, we **REVERSE** the decision of the district court, and **REMAND** for entry of an order consistent with this opinion.