In re Ronald W. WOOLARD, Debtor.

Ronald W. Woolard, Plaintiff,

v.

June B. Axline, Defendant.

Bankruptcy No. 99–59201.
Adversary No. 99–0401.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Aug. 6, 2001.

John P. Brody, Kegler, Brown, Hill & Ritter, Columbus, OH, for plaintiff/debtor.

Michael T. Gunner, Hilliard, OH, for defendant.

### OPINION AND ORDER ON PLAINTIFF'S AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS (11 U.S.C. § 523(a)(5))

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court after trial of the plaintiff's amended complaint to determine the dischargeability of certain

debts pursuant to 11 U.S.C. § 523(a)(5) and (15). This opinion and order constitutes the Court's findings of fact and conclusions of law with respect to whether the spousal payments to be made by the plaintiff to the defendant under their separation agreement and decree of dissolution are actually in the nature of alimony, maintenance, or support for purposes of § 523(a)(5); and, if so, whether such payments are not so excessive as to be manifestly unreasonable under traditional concepts of support. A separate opinion and order shall issue with respect to the § 523(a)(15) claim.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this district. This is a core matter which this bankruptcy judge may hear and determine under 28 U.S.C. § 157(b)(2)(I).

The debt in question arises from a separation agreement executed by the parties and incorporated into their decree of dissolution. *See* Defendant's Exhibit H. The key provision of that agreement follows:

> The Husband agrees to pay to the Wife, as and for further discharge of his obligation of support for the Wife, spousal support in the sum of Three Thousand One Hundred ($3,100.00) per month for 84 months at which time spousal support shall be reduced to the sum of One Thousand and ⁰⁰⁄₁₀₀ Dollars ($1,000.00) for a period of 36 months commencing the effective date of this Agreement. Spousal support shall terminate upon the death of the Wife but not the remarriage of the Wife. The Husband acknowledges that the sum provided herein is, in addition to other support provided in the Agreement, necessary for the appropriate support of the Wife and the minor child Kelsey.

*See* IV *Spousal Support* pp. 11–12.

Thomas Bolon, the defendant's domestic attorney at the time the dissolution was finalized, prepared this separation agreement. The plaintiff was unrepresented by counsel throughout the dissolution proceedings. The Franklin County Common Pleas Court entered the decree of dissolution on or about February 5, 1998.

The plaintiff had an ownership interest in several health clubs during the 1990's, including Bay Wind, Metro V, Northtown and Fitness Express. Some of the businesses were limited partnerships; others were subchapter S corporations. In addition, the plaintiff had management contracts from time to time in other health clubs in which he had no ownership interest. The health clubs were operated under the aegis of Club Management, Inc.

The defendant was involved with the day-to-day operations of the clubs during this period. Her duties included hiring, employee training, advertising, and directing programming. Although the parties separated in 1994, she continued working for the clubs until the Fall of 1995. She remained on the payroll of Club Management, Inc. through September 1997.

The parties' marriage appears to have been irretrievably broken. They had married in August 1981 and had one child, Kelsey, who was twelve at the time of their dissolution. In early 1996, the defendant engaged Stephen Enz to represent her in a possible dissolution proceeding.

After several months of negotiations, proposals, and counter proposals, Mr. Enz drafted a separation agreement which he mailed to the defendant on November 19, 1996. This draft agreement provided for spousal support payments to the defendant of $1,000 per month for an indeterminate length of time. It further provided that the defendant's share of the businesses was $302,400 for which the plaintiff was to

pay to her eighty-four monthly installments of $3,600 each.

Although there were further discussions after it was mailed to the defendant, the draft agreement was never signed. The defendant became dissatisfied with Mr. Enz and hired another attorney, Gregg Lewis. No negotiations ensued between the plaintiff and Mr. Lewis.

On September 10, 1997, the defendant, along with Rick Axline, her current husband, met with a third attorney, Thomas Bolon. Mr. Bolon made handwritten notes of the meeting and subsequently testified as a witness at trial. One of the notations he made was "Make it all spousal support so nondischargeable in bankruptcy—argue not dischargeable—don't equate it to her interest in the businesses."

Mr. Bolon later drafted a separation agreement which provided for spousal support of $4,600 per month for 84 months and $1,000 per month beginning with the 85th month. Although not executed by the parties, the payments to the defendant were in the same total amount as the separation agreement drafted by Mr. Enz. Instead of designating the eighty-four installments of $3,600 as payment for the defendant's share of the businesses, however, this amount was simply added to the award designated spousal support. Mr. Bolon never discussed with the plaintiff the fact that this change might have the effect of rendering the entire amount nondischargeable in bankruptcy.

On October 13, 1997, the defendant sent a letter to the plaintiff regarding the draft separation agreement prepared by Mr. Bolon. *See* Plaintiff's Exhibit 18. Under the heading of Spousal Support, the defendant wrote:

The original agreement stated that you would pay a total of $302,400.00 for my interest in the businesses. This worked out to be $3,600.00 monthly for a period of 84 months. I agreed to take $1,000.00 off a month in order to lessen your monthly expenses. (At a savings of $72,000.00 to you). Therefore wouldn't that work out to be $2,600 (for clubs) plus $1,000 (spousal) and probably $800 (Kelsey)? That comes out to be approximately $4,400 a month. I will agree to $4,000 total a month which includes Kelsey's child support. This is an additional $400 savings which is equivalent to a $33,600 savings over the 84 month period.

The separation agreement ultimately entered into by the parties provided for spousal payments of $3,100 per month for 84 months and child support of $970.85 per month for a monthly total of $4,070.85. Beginning with the 85th month, the spousal payments would reduce to $1,000 for another 36 months.

Title 11, United States Code, Section 523, provides in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . . .

(5) to a ... former spouse ... for alimony to, maintenance for, or support of such spouse ..., in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement but not to the extent that—

. . . .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support. . . .

11 U.S.C. § 523(a)(5).

Where, as in this case, the payments are denominated in the separation

agreement as spousal support, the question is whether they are, in fact, support and not a property settlement in disguise. *Fitzgerald v. Fitzgerald (In re Fitzgerald)*, 9 F.3d 517, 521 (6th Cir.1993). Unlike the parties in *Fitzgerald*, the plaintiff and the defendant are not in agreement that the payments constitute alimony, and the plaintiff has produced considerable evidence challenging their characterization as alimony in the separation agreement. *See id.* Nonetheless, the defendant argues that *Sorah v. Sorah (In re Sorah)*, 163 F.3d 397 (6th Cir.1998) creates an irrebuttable presumption that an award designated as support by a state court and which has traditional state law indicia of support, constitutes support within the meaning of 11 U.S.C. § 523(a)(5).

In *Sorah*, the Bell Circuit Court in Kentucky granted a divorce and ordered the debtor to pay his former wife $750 per month as maintenance until the earliest of her death, remarriage, or 62nd birthday. *Id.* at 399. The Sixth Circuit held that because these restrictions on the award satisfied the traditional indicia of support, the state court's designation of the award as maintenance not only is entitled to deference, but that the award, under these circumstances, should conclusively be presumed by the bankruptcy court to be support. *Id.* at 401.

The Sixth Circuit has long recognized, however, a distinction between contested and uncontested divorce proceedings in terms of the deference to be given a state court decree.

In a contested case the likelihood that the state court would have awarded support where it was unnecessary is sufficiently remote that such interference by the bankruptcy court will seldom be necessary. When, as in the present controversy, the decree is not the result of a contested case but merely incorporates the parties' agreement, the concern for comity is of less importance. To allow the parties' characterization of a loan assumption in such cases to control pro forma would permit the debtor to agree to forego his rights under the bankruptcy laws.

*Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1109 n. 10 (6th Cir.1983).

More recently, the Bankruptcy Appellate Panel pointed out the extremely limited role exercised by Ohio courts in a dissolution proceeding such as this one. *Corzin v. Fordu (In re Fordu)*, 209 B.R. 854, 863 (6th Cir. BAP 1997), *aff'd*, 201 F.3d 693 (6th Cir.1999). Although the state court has the authority to approve or disapprove the separation agreement entered into by the parties, it cannot unilaterally change the provisions of the agreement in a dissolution proceeding. *Id.* [citations omitted].

■ Based on the foregoing analysis, this Court concludes that the separation agreement incorporated in the Franklin County Common Pleas Court's decree of dissolution is not entitled to the degree of deference prescribed by *Sorah* under the circumstances of that case.[1] The overwhelming evidence in this case compels the conclusion that to the extent the monthly payments exceeded $1,000, they were nothing more than an effort to divide equitably what the parties believed at one time to be the value of the plaintiff's health club businesses.[2] As such, the $2,100 portion of

---

**1.** The parties actually waived any findings of fact by the state court as to the monthly spousal payments. *See* section XXII of their Separation Agreement.

**2.** The only evidence to the contrary, other than the defendant's testimony, was the treatment by both parties of the $3,100 payments as alimony on their respective federal tax returns in 1998 and 1999. This characteriza-

these monthly payments was simply a disguised property settlement outside the scope of the dischargeability exception found in 11 U.S.C. § 523(a)(5). *See Blaustein v. Berg (In re Berg)*, 167 B.R. 9, 13 (Bankr.E.D.N.Y.1994).

■ The plaintiff's obligation to pay the defendant $1,000 for a period of 120 months will, on the other hand, be nondischargeable under § 523(a)(5) absent proof that this award is manifestly unreasonable under traditional concepts of support and in light of the earning power and financial condition of the plaintiff. *See Calhoun*, 715 F.2d at 1110; *Sorah*, 163 F.3d at 402. The Court should view the plaintiff's earning ability and financial status both at the time of the dissolution and, if his circumstances have changed, his current ability to pay. *Calhoun*, 715 F.2d at 1110; *Skaggs v. Skaggs (In re Skaggs)*, 91 B.R. 1018, 1022 (Bankr.S.D.Ohio 1988).

■ The obligation to pay the defendant $1,000 a month spousal support for ten years does not, in this Court's view, offend traditional notions of support even though such payments were not terminable upon the defendant's remarriage. This was a 16–year marriage in which the plaintiff enjoyed a wide disparity in income and earning ability over the defendant. Moreover, the scheduled termination of the support obligation coincides with the probable date of graduation from college by the parties' minor daughter.

■ This leaves only the question of whether the award is unreasonable in terms of the plaintiff's ability to pay either then or now.[3] *Calhoun*, 715 F.2d at 1110;

*Sorah*, 163 F.3d at 402. In deciding this question, this Court does not sit as a super-divorce court to determine the most reasonable level of support, but considers the evidence that the award exceeds what the plaintiff can reasonably be expected to pay. *Id.*

Much of the evidence concerning the plaintiff's ability to pay dealt with the analysis required under § 523(a)(15) in the event that the Court determines the spousal payments not to be alimony, maintenance or support for purposes of § 523(a)(5). There was comparatively little evidence bearing directly on whether spousal support of $1,000 per month was unreasonable at the time of the parties' dissolution or as a continuing obligation at the present time. The evidence adduced that is relevant to this issue, however, does not suggest that a monthly award of $1,000 was, or is, unreasonable.

At the time of the dissolution, the plaintiff was receiving a fixed salary of $68,000 plus distributions from his various businesses for a total of approximately $104,000 per year. Based on his ability for more than a year following the dissolution to make both the spousal payment of $3,100 per month and monthly child support payment of $970.85, the Court cannot say that a $1,000 per month alimony award would have been unreasonable at that time.

There is no question that the plaintiff's financial circumstances had changed considerably by the beginning of 1999. The various health clubs, including the Athletic Club at Metro V, had all closed prior to

---

tion does not estop the plaintiff from claiming that the payments were, in fact, a property division for purposes of § 523(a)(5). *Kelley v. Kelley (In re Kelley)*, 216 B.R. 806, 809–10 (Bankr.E.D.Tenn.1998).

**3.** Contrary to the defendant's argument, the fact that an Ohio domestic court may lack jurisdiction to modify a spousal award incorporated into a dissolution decree does not preclude this Court from determining this issue. *Henry v. Edwards (In re Edwards)*, 216 B.R. 796, 805 (Bankr.S.D.Ohio 1997).

the end of 1998, and the plaintiff was no longer receiving any funds from Club Management, Inc. In January 1999, the plaintiff's regular income consisted of an annualized salary of $72,000 from Integrated Health Partners ("IHP"), a relatively new entity which had a management contract with the McConnell Heart Health Center. When McConnell decided to buy out the plaintiff's fee contract in May 1999, and later to cancel his consulting contract, the plaintiff's income ceased except for some distributions from IHP and some of his former businesses. Faced with mounting business and personal liabilities, he filed his chapter 7 petition on October 8, 1999.

There is also no question that the plaintiff's financial condition has significantly improved since his bankruptcy filing. On June 16, 2000, he secured employment with Club Corp. out of Dallas, Texas. He went through an eight-month training program and signed a contract with Club Corp. effective March 1, 2001, to manage the Capital Club in Columbus. The contract calls for an annual salary of $85,000 with the potential for incentive bonuses of $15–18,000 a year. Given this level of income, the Court likewise cannot say that a monthly payment of $1,000 for spousal support would be unreasonable at the present time.

For the foregoing reasons, the Court concludes that $2,100 of the monthly payments the plaintiff was to make to the defendant for a period of 84 months under their separate agreement, although designated as spousal support, is not actually in the nature of alimony, maintenance, or support for purposes of 11 U.S.C. § 523(a)(5). The Court further concludes that the monthly payment of $1,000 for 120 months is in the nature of alimony, mainte-

nance, or support and is, therefore, nondischargeable under § 523(a)(5).

**IT IS SO ORDERED.**