**In re Dale E. CORDIA, Debtor.**

**Delpha A. Phelps, Plaintiff,**

v.

**Dale E. Cordia, Defendant.**

**Bankruptcy No. 01–60259.
Adversary No. 01–6034.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Dec. 21, 2001.

William C. Greene for Plaintiff.

Donald M. Miller, Canton, OH, for Defendant-debtor.

## MEMORANDUM OF DECISION

RUSS KENDIG, Bankruptcy Judge.

This adversary proceeding came before the court for trial on November 27, 2001. Plaintiff Delpha A. Phelps (hereafter "plaintiff") was represented by William C. Greene and debtor-defendant (hereafter "debtor") Dale E. Cordia was represented by Donald M. Miller. Plaintiff, ex-wife of debtor, filed this adversary proceeding seeking to have certain debts arising under the parties' judgment of divorce deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(5) and (15).

The court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I). In accordance with Federal Rule of Bankruptcy Procedure 7052, the court's findings of facts and conclusions of law are set forth in this opinion.

## FACTS

Plaintiff and debtor were married on February 14, 1992. On March 3, 1998, the Court of Common Pleas for Harrison County entered a judgment of divorce. The plaintiff was awarded the marital residence and the trucking company operated by the parties during their marriage. The decree also set forth the division of property and allocation of debts between debtor and plaintiff. At issue in this proceeding are debtor's obligations to hold plaintiff harmless on one half of the marital indebtedness and on the debts owed on a 1989 Freightliner truck and Ford pickup truck, as well as $4,600.00 owed plaintiff for a violation of a state court order.[1]

Debtor filed a petition under chapter 7 of the United States Bankruptcy Code on January 26, 2001 and sought discharge of the above debts. Plaintiff was listed as both an unsecured creditor and a co-debtor in the schedules. Debtor received a discharge on May 23, 2001.

Debtor, debtor's current wife and plaintiff testified at trial. From the trial evidence and testimony, the court finds the following. Plaintiff remarried and operates D & C Trucking Company (hereafter "D & C") with her current husband, who drives for D & C. D & C is leased through Vision Express (hereafter "Vision"). D & C financial statements show a gross September 2001 income of $7,000.95 (net $4,157.45), gross October income of $6,413.55 (net $3,677.27) and a November

---

1. Debtor also was ordered to provide temporary spousal support. That obligation terminated and is not at issue in this proceeding.

income, through November 16, 2001, of $4,734.75 (net $2,958.25). D & C's income increased in recent months. Plaintiff testified that now she is also employed by Vision and works 30–32 hours per week at $7.00 per hour. No exhibits or other documentation of her Vision income was provided. Plaintiff testified to her belief that she expected to earn more in the future.

Plaintiff's monthly expenses are unclear. Although several exhibits were introduced, plaintiff admitted to double counting some expenses. Documents supporting the expenses were drafted by the plaintiff and are contradictory and self-serving. Further, the business and personal expenses are often commingled. The problem is exacerbated by the fact that plaintiff does not maintain a checking account, so the only means of tracking expenses is through receipts, but no receipts were introduced. Plaintiff did not produce the receipts in response to discovery. At one point, plaintiff testified she can meet her monthly expenses with a net income of $3,000 each month. She also stated that she could pay one half of the debts from the divorce judgment.

Plaintiff and her husband own their residence, which plaintiff valued at $65,000. They are purchasing an additional 15 acres by land contract.[2] In financial disclosure forms filed September 26, 2001 in response to the trial order,[3] the real estate is valued at $82,000 and subject to a loan amount of

$37,000, resulting in net equity of approximately $45,000. The other assets have a net equity of $11,500.

Plaintiff's Exhibit G lists $29,000 in total liabilities, excluding the mortgage. Exhibit G includes the joint debts allocated in the divorce decree (approximately $21,000). According to plaintiff, creditors are not undertaking collection activity on these marital debts. Plaintiff also included in Exhibit G approximately $8,000 in liabilities incurred after the divorce. No separate description of plaintiff's husband's liabilities, if any, was presented.

As for plaintiff's health and educational background, plaintiff's statement filed September 26, 2001 in response to the trial order states:

> Delpha Phelps is a 46–year–old woman in fair health. She has a history of a bad back. Her education consists of completion of a high school diploma and two years of college at Stark State Technical College. Delpha does not have a college degree or special skills.

No evidence on her husband's health or education was offered. Plaintiff argued that bankruptcy is not a desirable alternative because of the equity in the real estate.

Debtor also remarried. He and his wife jointly purchased 15 acres of land approximately two or three years ago. According to Exhibit 1, the fair market value of the land is $34,700 and the debtor and his wife

---

**2.** Plaintiff testified the purchase price was $11,900 and they owe approximately $3,000.

**3.** This decision contains repeated references to information contained in, or omitted from, various documents prepared pursuant to the terms of a trial order. All dischargeability proceedings pursuant to 11 U.S.C. § 523(a)(5) and (15) are subject to a trial order listing specific, detailed information to be provided relating to the parties' circumstances, including information relating to other members of the household. The purpose

of the trial order is to direct the parties to the appropriate factual and legal issues and to ensure that the court makes a legally appropriate and factually informed decision. Plaintiff failed to provide any of the required information, resulting in a continuance of the trial and subsequent sanction proceedings. Following the continuance, plaintiff filed documents only partially complying with the trial order. The trial was held nonetheless. Defendant did not object.

owe $21,995 on the real estate. Debtor testified that the value of the real estate was based on an appraisal by Barnett Realtors. His wife owns the mobile home in which they reside and the debt on it exceeds the value. The debtor and his wife have few other assets. Although debtor listed $14,000 in tools and $2,500 in Jack Daniels collectibles, these are in plaintiff's possession and she refuses to return them despite repeated demands. The Cordias other assets are valued at $2,370.

Debtor owns a 1995 International tractor, but no trailer (hereafter "truck") and has contracted for work with McIlvaine Trucking (hereafter "McIlvaine") for over a year. The truck is valued at $10,000 and $10,000 is owed. His 2001 actual income, identified in Exhibit 2 and supported by Exhibit 3, was $3,515.59 for May; $5,309.29 for June; $7,340.60 for July; and $3,731.09 for August, for an average of $4,974.14 per month. Debtor's income is net of some, but not all, expenses. He projected income of $4,000 per month for the months of November 2001 through March 2001 based on two trips per day. His trips have been drastically reduced because asphalt plants close for the winter and McIlvaine lost a large contract, so the projection far exceeds reality. When he filed, debtor hauled acid. Debtor cannot haul acid in his current truck, so he has been hauling liquid asphalt which offers only seasonal demand. Mrs. Cordia recently started working at a restaurant as a kitchen helper and a salad maker. She works 30–35 hours per week at $7.00 an hour.

Debtor listed expenses of $4,399 per month, including truck expenses of $1,707. This figure does not include payments to Union Hospital and Verizon, payment of liabilities owed by debtor's wife (which exceed $29,500) or payment on any obligations at issue here. Following his bankruptcy discharge, debtor remains liable on a $2,500 debt to the IRS. He reaffirmed his obligation on the real estate. He testified he owes his stepbrother on a loan for his truck and he incurred postpetition credit card debt and medical expenses. Debtor did not provide any information on Mrs. Cordia's ability to file for bankruptcy.

Exhibit 6, supported by testimony at trial, reveals the following.

Dale Cordia is 54 years of age. Is in fair healt (sic) condition. Dale has had 3 heart attacks, also he is a diabetic who takes insulin. Dale has had surgery on both knees and his vision is fair. Dale also wears bifocial (sic) glasses.

Dale has no special skills or training. He is a truck driver.

Rebecca Cordia is 44 years old. Is in good health condition. Rebecca has vision in only the left eye. She has daytime vision only. The only job training she had was a bookkeeping coarse (sic) in 1985. No further skills or training.

The debtor and his wife do not have health insurance coverage and cannot obtain coverage because of debtor's medical history. Debtor suffered from kidney stones and incurred $3,400 of related debt. Now the Veterans' Administration seeks to hospitalize debtor to reconstruct his knee. The VA does provide some assistance with medication.

## DISCUSSION

### I. 523(a)(5)

In accordance with 11 U.S.C. § 523(a)(5) and (15), marital debts can constitute an exception to the general discharge available under section 727. In order to be excepted from discharge under section 523(a)(5), the debt must be "to a spouse, former spouse or child . . . of the debtor, for alimony to, maintenance for, or

support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of record . . . ." 11 U.S.C. § 523(a)(5). In a majority of cases filed under section 523(a)(5), the issue is whether the debt is in the nature of alimony, maintenance or support. There being no question that plaintiff is debtor's former spouse or that the obligations were incurred in connection with the judgment of divorce, this proceeding is no different.

■ The Sixth Circuit Court of Appeals issued several decisions explaining the analysis to be undertaken under section 523(a)(5). The case frequently cited as the baseline is *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (6th Cir.1983). In *Calhoun*, the court had to determine whether an assumption of debt, labeled as alimony but located in the "Division of Property" section of the separation agreement, was in the nature of support.[4] The Sixth Circuit presented a four-part analysis focusing on (1) whether the parties intended to create an obligation to be in the nature of support, (2) whether the obligation in fact provides support, (3) whether the support award is unreasonable; and (4) if unreasonable, the amount of the debt to be discharged to carry out the policy of the bankruptcy code. *Fitzgerald v. Fitzgerald (In re Fitzgerald)*, 9 F.3d 517 (6th Cir.1993) (citing *Calhoun*, 715 F.2d at 1109–10).

■ *Fitzgerald* communicated a standard to be applied when an obligation is labeled as support. "Thus, *Fitzgerald* stands for the proposition that a state court's award of alimony is entitled to deference when labeled and structured as such." *Sorah v. Sorah (In re Sorah)*, 163 F.3d 397, 401 (6th Cir.1998).[5]

■ The Sixth Circuit further expounded on the analysis in *In re Sorah* when it advised bankruptcy courts faced with a question whether an obligation is in the nature of support to review the obligation in light of "traditional indicia" of a support award, including

(1) a label such as alimony, support, or maintenance in the decree or agreement, (2) a direct payment to the former spouse, as opposed to the assumption of third-party debt, and (3) payments that are contingent upon such events as death, remarriage, or eligibility for Social Security benefits.

*Sorah v. Sorah (In re Sorah)*, 163 F.3d 397, 401 (6th Cir.1998). *Sorah* involved an award labeled "maintenance" by the state court but discharged by the bankruptcy court as not in the nature of support. *Sorah* reaffirmed the requirement that bankruptcy courts defer to state courts' decisions if awards appear to be in the nature of support. Stated differently, if an obligation is designated as support and has the indicia, the intent to create a support award is conclusively presumed and a bankruptcy court is not to challenge that intent by probing the award. The court did not provide an exhaustive list of indicia, instead deferring to state law. *Sorah*, 163 F.3d at 401. Surprisingly the court held that a bankruptcy court could still discharge such an award "to the extent

---

**4.** In a subsequent decision, the Sixth Circuit stated that *Calhoun* "provided an analytical framework for determining when obligations are 'actually in the nature of alimony, maintenance, or support,' and thus nondischargeable, when they are not designated as such." *Fitzgerald*, 9 F.3d at 520.

**5.** *Fitzgerald* also eliminated the "present needs" inquiry undertaken by many courts in the second prong of the *Calhoun* analysis, at least so far as it relates to alimony or support.

that it exceeds what the debtor can reasonably be expected to pay." *Id.* at 402.

The debtor's obligations in this case are not as labeled support and the Sixth Circuit has not specifically prescribed the framework for a review in this circumstance. The question is whether, in deference to the state court, the absence of the traditional indicia of support forecloses further review of the award. In other words, can the court use the indicia conversely to establish that an award is not in the nature of support? This court finds that the answer is yes. Since the Sixth Circuit has not yet confronted this question directly, the court may later determine that the indicia are not exclusive. Until that day, however, section 523(a)(5) jurisprudence centers on the indicia.[6] The indicia may be different depending on the facts and state law. *See Sorah,* 163 F.3d at 401.

The *Calhoun* court had to engage in a thorough review of the state court's intent partially because of the dual labels attached to the award. While the obligation was labeled as alimony, it was located in the division of property section of the separation agreement. Before the court could determine if it was a duck, it had to use a duck call to see if the award quacked back. *Sorah,* 163 F.3d at 401. Through the *Calhoun* progeny, the Sixth Circuit essentially applied the jurisprudence of statutory interpretation to the section 523(a)(5) analysis: if there is no ambiguity, as evidenced by the traditional indicia, the inquiry ends. Further inquiry is required only when the indicia are not determinative.

Our analysis begins by exploring the nature of the award through the indicia identified in *Sorah.* If the indicia demonstrate that the award is not one of support, the court will not review the divorce judgment further and will discharge the obligation. The burden is on the non-debtor spouse to prove the obligation is one of support. *Id.*

In this case, the obligations were not labeled as support, maintenance or alimony. The obligations are located in section six of the divorce decree titled "Order of the Court as to Division of Assets and Allocation of Debt." While temporary spousal support was awarded, it terminated soon after the entry of the divorce decree. The court notes that an award of spousal support was separately considered in paragraph seven of the divorce decree and the court declined to award plaintiff additional support. The court specifically found that "[b]oth parties are able to earn income from the trucks they operate" and recognized that both plaintiff and defendant had been employed during their adult lives. Opinion and Judgment Entry, p. 11.

Looking at the second indicator, direct payment to the former spouse, the court finds that only one of the obligations was directly payable to plaintiff. Debtor was ordered to pay plaintiff $4,600 "as and for reimbursement to Plaintiff for indebtedness incurred as a result of the actions of Defendant in contravention of this Court's order of October 10, 1996." Opinion and Judgment Entry, p. 10. Thus, while the award may be payable to plaintiff, no intent to deem it support is expressed. It is not contained within the paragraph labeled as support. Finally, the court must look at the third indicator, specifically whether the payments are contingent on other life events. The court finds that they are not contingent.

---

6. Additionally, there is no deference or presumption in favor of a finding of support since the award was not labeled as support.

Any deference must run in favor of defendant since the award was not labeled as support.

Based on the above, the court concludes that the obligations owed by debtor do not bear the traditional indicia of support and there is no manifest intent to create a support award. Rather, the obligations merely represent a division of property through the assumption of debt. Plaintiff has failed to carry her burden and establish that the obligations are awards constituting alimony, maintenance or support. Therefore, the court concludes that the debts are dischargeable under section 523(a)(5).

## II. 523(a)(15)

■ Section 523(a)(15) is read in conjunction with section 523(a)(5). Section 523(a)(15) provides that if a debt does not qualify for treatment under 523(a)(5), but "is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court," it is dischargeable unless

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(5) and (15). Subsection (A) is referred to as the ability to pay test, while subsection (B) is commonly known as the balancing test. Often, section

523(a)(15) applies to property settlements and the allocation of debt not excepted from discharge under section 523(a)(5).

■ It is plaintiff's burden to prove that the debts at issue qualify for review under section 523(a)(15). *Hart v. Molino (In re Molino)*, 225 B.R. 904, 907 (6th Cir. BAP 1998). As discussed above, the debts are obligations arising from the March 1998 Opinion and Entry of Judgment in the parties' divorce, so plaintiff has met her burden. The burden then shifts to the debtor to demonstrate, by a preponderance of the evidence, that he meets one of the exceptions presented in section 523(a)(15). *Id.* (citations omitted).

### A. Ability to Pay

■ The determination of any analysis of ability to pay must focus on the income and expenses of the debtor. *See also Koenig v. Koenig (In re Koenig)*, 265 B.R. 772 (Bankr.N.D.Ohio 2001). The court views the debtor's financial situation at the time of trial, rather than at the time of the petition. *See id.* (citing *Newcomb v. Miley*, 228 B.R. 651, 655 (Bankr.N.D.Ohio 1998)).

■ The debtor introduced evidence, Exhibits 2 and 3, establishing an average monthly income of approximately $4,974.14 per month. He projected a monthly income of $4,000 during the winter months, but debtor testified that the projections are too high. They were based on making two trips per day hauling liquid asphalt and McIlvaine lost the contract on which he based the projection. According to debtor, he received only one trip the week of the trial.[7] He testified he has no means of paying the debts. The court finds debtor's testimony to be entirely credible.

7. Exhibit 4 supports debtor's testimony that he receives $270 per trip and must pay his gas expenses from this amount.

Debtor maintained records, the veracity of which is supported.

Debtor's wife testified that she nets $800 per month. Although this was not included in the projection, in light of debtor's loss of income, her additional contribution still does not allow debtor to pay reasonable living expenses and leave sufficient funds to pay on the obligations owed plaintiff. Debtor's wife testified that she pays bills from a joint checking account in which all their income is deposited. She stated that there are some bills which they cannot pay because they do not have enough money. They are behind in payments on almost all of her separate obligations. The court finds her testimony also to be credible. Further, the records submitted in support of debtor's testimony were reliable and unchallenged by plaintiff.

Debtor and his wife listed $4,399 in expenses each month. The expenses were not disputed at trial and the court finds the expenses to be reasonable. A portion of the expenses, $1,707, is attributed to truck expenses. While these expenses are likely to decline if debtor makes fewer trips, there is a substantial corresponding loss of income. Even with no truck expenses, the debtor and his wife still incur $2,692 in expenses each month. After hearing the testimony, debtor cannot meet even the $2,692 in monthly expenses in light of the lost McIlvaine contract. There are numerous other expenses which vary monthly due to factors such as debtor's lack of health insurance.

The undisputed evidence is that debtor and his wife have continued to fall behind financially even after the bankruptcy. Bills continue to mount for debtor, including medical bills. Debtor is an insulin dependent diabetic who has had three heart attacks and has no medical insurance. Debtor's financial circumstances continue to decline without a reasonable

prospect of sustained improvement due to his age, job skills, and health. His wife's prospects are similarly limited.

For these reasons, the court concludes that debtor does not have an ability to pay the debts owed to plaintiff.

**B. Balancing Test**

■ The Sixth Circuit Bankruptcy Appellate Panel opinion in *Hart v. Molino (In re Molino)* provides guidance on the analysis to be undertaken for section 523(a)(15)(B). According to *Molino*, the court reviews both parties' financial statuses and standards of living. If the standards of living between plaintiff and debtor are relatively equal, or debtor enjoys a higher standard of living, the debt is not dischargeable. If, however, repayment of the obligations would materially lessen debtor's standard of living, the debt should be discharged. *Id.* at 909 (citing *In re Smither*, 194 B.R. 102 (Bankr.W.D.Ky. 1996)).

■ The unpublished Sixth Circuit decision of *Patterson v. Patterson (In re Patterson)* adopted a nonexclusive list of eleven factors to consider in determining each party's standard of living. Those factors are:

1. The amount of debt involved, including all payment terms;

2. The current income of the debtor, objecting creditor and their respective spouses;

3. The current expenses of the debtor, objecting creditor and their current spouses;

4. The current assets, including exempt assets of the debtor, objecting creditor and their respective spouses;

5. The current liabilities, excluding those discharged by the debtor's bankruptcy, of the debtor, objecting

creditor and their respective spouses;

6. The health, job skills, training, age and education of the debtor, objecting creditor and their respective spouses;

7. The dependents of the debtor, objecting creditor and their respective spouses, their ages and any special needs which they may have;

8. Any changes in the financial conditions of the debtor and the objecting creditor which may have occurred since entry of the divorce decree;

9. The amount of debt which has been or will be discharged in the debtor's bankruptcy;

10. Whether the objecting creditor is eligible for relief under the Bankruptcy Code; and

11. Whether the parties have acted in good faith in the filing of the bankruptcy and the litigation of the 11 U.S.C. § 523(a)(15) issues.

*Patterson*, 1997 WL 745501, *3 (6th Cir. 1997) (unpublished) (citing *Smither*, 194 B.R. at 111) (other citation omitted).

█ First, the court will consider each party's income. Plaintiff's husband has been steadily employed driving the D & C truck and through their operation of D & C, they are now netting more than $3,500 per month. This does not include plaintiff's income from her clerical position at Vision. If that is added, their monthly net income easily exceeds $4,000. The court cannot determine the actual monthly expenses paid each month by plaintiff and her husband and does not accept plaintiff's proffered figure of $3,000 as an accurate figure for monthly expenses.[8] But, even if plaintiff is correct, she has at least $1,000 of disposable income each month. Plaintiff testified she could pay one half of the obligations from the divorce. She also expects her income to increase in the future.

Plaintiff and her husband have built equity in their real estate and other assets exceeding $50,000. Plaintiff also still possesses $15,000 in assets owned by debtor which she was ordered in the divorce decree to return. Excluding the prior marital debt, plaintiff only listed approximately $8,000 in liabilities.[9] Plaintiff provides no separate documentation of any liabilities owed by her husband.[10]

Debtor and his wife both testified, credibly, that they do not have enough income each month to meet their expenses, particularly in light of debtor's recent income reduction. Through no fault of his own, debtor is no longer able to make the trips he anticipated and is not guaranteed any weekly trips. His wife adds $800 per month to their income. With operation of the truck, they have monthly expenses of approximately $4,400 excluding payments on the debt from debtor's recent hospitalization. Assuming debtor was to receive his projected income, which the court finds unlikely due to McIlvaine's lost contract, the debtor and his wife would have only $400 in disposable income to pay hospital expenses, debts at issue here, other accu-

---

8. The court's disbelief arises from the plaintiff's less than credible testimony, poor record-keeping, lack of reliability in the records produced, and failure to comply with the trial order.

9. Exhibit G is a list of liabilities. A review of the exhibit incorporated in Exhibit A shows that the majority of the liabilities included in plaintiff's list are those from the divorce judg-

ment. The last nine creditors listed on Exhibit G are post-divorce liabilities.

10. Plaintiff repeatedly failed to comply with court orders relating to information and documentation to be provided on many related issues. It is unclear whether this resulted from lack of records, defiance, or both. In any regard, plaintiff is lacking credibility.

mulated debts, and future medical expenses. The court finds it unlikely that debtor's and Mrs. Cordia's income will cover their monthly expenses. Debtor makes no present payments on Mrs. Cordia's substantial liabilities and it appears the Cordias income is insufficient to service those debts.

The debtor and his wife have fewer assets than do the plaintiff and her husband. Excluding the $12,705 equity in the real estate, they have less than $2,500 in assets in their possession. Debtor exempted these assets. He discharged more than $90,000 in debt, including deficiency balances arising after surrendering two trucks used in his employment. Debtor's prospects for other employment are clearly limited because of his poor health. His wife's vision problem and limited educational background rule out household sustaining employment as a reasonable possibility.

Plaintiff, however, has two years of training at a technical school and no major health issues. She has operated D & C for a number of years. Her husband's educational background and health status were not provided. She testified to an increase in income from D & C in the last few months.

The court also considered plaintiff's ability to file bankruptcy. While plaintiff understandably may not want to file bankruptcy, the question the court must ask is whether she has the ability. From the information provided at trial, the court believes the answer is yes. There is a substantial question whether that would be necessary since there has been no collection activity on the debts in question in quite some time. The court's application of the balancing test would produce the same result in either event. Debtor and his wife would continue to fall behind even if plaintiff were to file bankruptcy.

Based on the above, the court concludes that plaintiff and her husband enjoy a higher standard of living, which they can continue to sustain, than debtor and his wife. Therefore, the benefit to debtor in the discharge outweighs the detriment to plaintiff. The court finds that debtor should be discharged from his obligations to plaintiff arising from their judgment of divorce.

An order in accordance with this decision will issue forthwith.