**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 12a1065n.06**

**No. 11-2639**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re: PATRICK RUGIERO | ) | |
| | ) | **FILED**<br>*Oct 10, 2012*<br>DEBORAH S. HUNT, Clerk |
| Debtor | ) | |
| _____ | ) | |
| | ) | |
| PATRICK RUGIERO, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Appellant, | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| v. | ) | |
| | ) | |
| ANTONIETTA DINARDO, | ) | |
| | ) | |
| Appellee. | ) | |

Before: SUTTON, GRIFFIN and WHITE, Circuit Judges.

SUTTON, Circuit Judge. In the course of a custody dispute between Patrick Rugiero and Antonietta DiNardo, a Michigan state court awarded DiNardo $100,000 in attorney's fees. Rugiero sought bankruptcy protection soon after. The question is whether an exception to the automatic stay—for domestic support obligations—applies, and whether the debts are non-dischargeable. We think so in both respects and therefore affirm.

No. 11-2639
*In re: Patrick Rugiero*

I.

Patrick Rugiero and Antonietta DiNardo are the unmarried parents of two minor children. In the course of resolving their child-custody dispute, the Wayne County Circuit Court ordered Rugiero to pay DiNardo $20,000 in attorney's fees on May 24, 2010, and an additional $80,000 in attorney's fees on November 30, 2010. R.15 at 1–2. Soon after the second order, Rugiero filed for Chapter 13 bankruptcy (reorganization) in the U.S. District Court for the Eastern District of Michigan, and later converted the filing to a Chapter 7 bankruptcy (liquidation). *Id.* at 2.

Rugiero filed a motion in the Michigan state court for a stay pending his appeal of the attorney's fee awards. DiNardo opposed the motion, stating that an exception to the automatic stay (11 U.S.C. § 362(a)) applicable to property of the bankruptcy estate—for domestic support obligations—applied. For the same reason, DiNardo argued the awards were non-dischargeable. Rugiero filed a motion in the bankruptcy court to enforce the automatic stay. While that was pending, the state court denied a stay pending appeal, holding that it retained jurisdiction and that the awards were non-dischargeable. In his bankruptcy court reply, Rugiero asked the bankruptcy judge to enforce the automatic stay by issuing an order voiding the state court ruling.

The bankruptcy court denied Rugiero's motion, holding that the domestic-support exception to the automatic stay applied and that it lacked the power to declare the debts non-dischargeable under the *Rooker-Feldman* doctrine. The district court affirmed on both issues. Rugiero appealed.

No. 11-2639
*In re: Patrick Rugiero*

We have jurisdiction over this appeal.  *See* 28 U.S.C. § 158(d); *cf.* 28 U.S.C. §§ 1291, 1292;

*Eddleman v. U.S. Dep't of Labor*, 923 F.2d 782, 784 (10th Cir. 1991).

II.

Congress vests the federal courts with exclusive jurisdiction over bankruptcy estates. 28 U.S.C. § 1334(a). Seeking the "efficient[] and expeditious[]" treatment of bankruptcy cases, *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995), Congress established that the filing of a bankruptcy petition automatically stays other court proceedings (state or federal) related to the debtor. 11 U.S.C. § 362(a). Like many rules, however, this one comes with exceptions. Of import here, § 362(b)(2)(A)(ii) excepts actions "for the establishment or modification of an order for domestic support obligations." Consistent with this exception, the Bankruptcy Code prevents a debtor from discharging a debt "for a domestic support obligation" in bankruptcy. 11 U.S.C. § 523(a)(5). So far so good.

Confusion arose in this case when the Michigan state court ruled on the awards' status as domestic support obligations. In the face of that ruling, the federal bankruptcy and district courts thought that the *Rooker-Feldman* doctrine divested the federal courts of jurisdiction to decide whether the debts were dischargeable. That is not right. This doctrine prevents litigants from collaterally attacking final state court orders by filing new federal claims. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292, 287, 291 (2005).

No such problem arose here. Rugiero filed for bankruptcy *before* the state court issued its order regarding a stay. The *Rooker-Feldman* doctrine applies, if it applies at all, only when the state court loser files a new lawsuit in federal court *after* the state court adversely rules. "[N]either *Rooker*

nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court." *Id.* at 292; *see also Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 233 (6th Cir. 2011) (dismissing *Rooker-Feldman* claim where state court judgment postdated commencement of federal court suit). The bankruptcy and district courts had jurisdiction over this action, and so do we.

Despite the *Rooker-Feldman* confusion, the bankruptcy and district courts correctly held that the fee awards amounted to domestic support obligations. As a result, they determined that the automatic stay did not apply to the state court proceedings, and their holdings necessarily implied that those debts are non-dischargeable.

The Bankruptcy Code defines "domestic support obligation" as

[1] a debt . . . [2] that is . . . owed to or recoverable by . . . a . . . child of the debtor or such child's parent . . . [3] in the nature of alimony, maintenance, or support . . . of such child of the debtor or such child's parent, without regard to whether such debt is expressly so designated; [4] established . . . by . . . an order of a court of record.

11 U.S.C. § 101(14A). Rugiero does not deny that DiNardo meets three of the four prerequisites for the exemption—that the fee award reflects a "debt," "recoverable" by the "child's parent," and "established" by a court "order." The question is whether the fee awards, which arose from attorney's fees incurred by DiNardo during the custody dispute, amount to "support" of the child's parent.

Before answering that question, it is worth clearing some of the brush surrounding it. Nothing in the statute requires the "child's parent" to be married at the time of the award or indeed ever to have been married to the other parent. It thus matters not that DiNardo and Rugiero never married. What matters is that they had two children.

Nothing in the statute precludes an attorney's fee award from being treated as "in the nature of . . . support." Were it otherwise, a litigious boyfriend, to use one example that comes to mind, could make life miserable for his girlfriend by waging a costly custody dispute over their children, one that the girlfriend might not be able to fend off based on her earnings (and other child-support payments) alone. That is why many courts have treated fee awards as "support" payments; it is the only way to allow some parents to vindicate their rights in court. *Eden v. Robert A. Chapski, Ltd.*, 405 F.3d 582, 588 (7th Cir. 2005); *In re Lowther*, 321 F.3d 946, 948 (10th Cir. 2002); *In re Maddigan*, 312 F.3d 589, 595–97 (2d Cir. 2002) (Sotomayor, J.); *In re Chang*, 163 F.3d 1138, 1141 (9th Cir. 1998); *Macy v. Macy*, 114 F.3d 1, 2 (1st Cir. 1997); *In re Hudson*, 107 F.3d 355, 357 (5th Cir. 1997); *In re Strickland*, 90 F.3d 444, 447 (11th Cir. 1996); *In re Kline*, 65 F.3d 749, 751 (8th Cir. 1995); *In re Silansky*, 897 F.2d 743, 744 (4th Cir. 1990) (per curiam). To our knowledge, no court has held that a fee award in this setting categorically *may not* be a support payment.

In gauging whether *these* fee awards count as support payments, we look at "traditional state law indicia" of support obligations. *Sorah v. Sorah*, 163 F.3d 397, 401 (6th Cir. 1998). Such as: "(1) a label such as alimony, support, or maintenance in the decree or agreement, (2) a direct payment to the former spouse, as opposed to the assumption of a third-party debt, and (3) payments

that are contingent upon such events as death, remarriage, or eligibility for Social Security benefits."
*Id.*

Measured by these considerations, the fee awards amount to support payments. In issuing the fee awards, the state court judge looked at the relative capacities of DiNardo and Rugiero to pay the fees. In the November 2010 order, for example, the state court observed that it is "convinced that [Rugiero] can bear the expenses of paying [DiNardo]'s attorney fees, while [DiNardo] can not. . . . [A]lthough [DiNardo] has now begun working, her income is very low. . . . [She receives] a meager amount of money to live on for a woman with two very young children, and it is not sufficient to pay her attorney fees as well." *Rugiero v. Dinardo*, Nos. 301829 *et al.*, 2012 Mich. App. LEXIS 1182, *51–52 (Mich. Ct. App. June 19, 2012). In recently affirming the fee awards, the Michigan Court of Appeals likewise found them to be domestic support obligations, reasoning that "the proceedings in this case concerned the welfare of the children and the affordability of the attorney fees was considered by the trial court in determining the amount of attorney fees." *Id.* at *64. In making the award, the state trial court also reasoned that a fee award is sometimes "necessary to enable a party to prosecute or defend a domestic relations action." Bankr. R.51 at 5. All indicia considered, the bankruptcy court had ample reason to treat the awards as domestic support obligations.

By contrast, when courts have held that fee awards do not amount to domestic support obligations, that was because the state court's orders failed to tie the awards to the creditor spouse's financial needs. *See, e.g.*, *In re Nolan*, Civ. No. 10-2589, 2010 U.S. Dist. LEXIS 105172, *12 (D.

Minn. Oct. 1, 2010) (stressing that "financial disparity between parties . . . is not present here"); *In re Lopez*, 405 B.R. 382, 385 (Bankr. S. D. Fla. 2009) (noting that state court order expressly stated it was "not based upon the respective wages or ability of the parties to pay") (emphasis removed); *In re Brossoit*, No. 07-42589-EDJ-7, 2009 Bankr. LEXIS 4617, *9 (Bankr. N.D. Cal. Nov. 25, 2009) (finding no indication that fees award was in the nature of support because "the record herein does not include any detailed information regarding the respective incomes or financial positions of" the couple); *see also In re Rios*, 901 F.2d 71, 72 (7th Cir. 1990) (holding that fees incurred by debtor were not in the nature of support). In this instance, the state courts' lengthy discussion of the relative financial positions of DiNardo and Rugiero avoids this concern.

Nor is the size of the fee awards too excessive to be treated as a domestic support obligation. Under *Sorah*, even if an award is typical of a domestic support obligation, a debtor can still discharge the award "*to the extent*" that it is unreasonable. *Sorah*, 163 F.3d at 402. In upholding the fee awards in this case, however, the state court of appeals saw no such problem. At the time of the first $20,000 award, DiNardo had incurred $98,235.33 in attorney's fees and had paid $36,939.86 of the bill, in part from her child support checks and in part from money received from family members. *Rugiero*, 2012 Mich. App. LEXIS 1182 at *45. By the time of the second award of an additional $80,000, DiNardo had incurred $184,697 in attorney's fees, of which $86,372.11 were incurred between March and October 2010. *Id.* at *49. She requested $130,000 in additional attorney's fees at the time. Given the trial court's "painstaking[]" review of the evidence, *id.* at *53, the state court of appeals found no reason to second-guess the trial court's awards. Nor do we. The awards are

domestic support obligations, the exception to the automatic stay applies and the debts are non-dischargeable.

III.

For these reasons, we affirm.