**In re Clifford M. JONES, Jr. Debtor.**

**Jill L. Jones, Plaintiff,**

**v.**

**Clifford Jones, Jr., Defendant.**

**Nos. 00–3016, 99–34398.**

United States Bankruptcy Court, N.D. Ohio.

Jan. 8, 2001.

747

Joseph R. Burkard, Paulding, OH, for plaintiff.

Steven L. Diller, Van Wert, OH, for defendant.

### *MEMORANDUM OPINION AND DECISION*

RICHARD L. SPEER, Chief Judge.

This case comes before the Court after a Trial on the Plaintiff's Complaint to Determine the Dischargeability of certain debts under 11 U.S.C. § 523(a)(5). The specific debts at issue in this case involve the Defendant's obligation to pay on certain notes which were secured against the real property awarded to the Defendant in the Parties' Divorce. At the Trial held on this matter, the Parties were afforded the opportunity to present evidence and any arguments that they wished the Court to consider in reaching its decision. This

Court has now had the opportunity to review the arguments of counsel, the evidence presented at Trial, as well as the entire record in the case. Based upon that review, and for the following reasons, the Court finds that the Defendant's obligations at issue herein are Dischargeable pursuant to 11 U.S.C. § 523(a)(5)(B).

## FACTS

In May of 1998, after approximately ten (10) years of marriage in which one (1) child was born, the Common Pleas Court of Paulding County, Ohio, entered a decree of dissolution which terminated the marriage between the Defendant, Clifford M. Jones, (hereinafter referred to as the "Defendant") and the Plaintiff, Jill L. Jones (hereinafter referred to as the "Plaintiff"). In this Decree of Divorce, the Paulding County Court of Common Pleas adopted the terms as set forth in the Parties' Separation Agreement. According to these terms, the Defendant, who was awarded the marital home, was allocated responsibility for paying the obligations secured against the marital home: to wit, a first mortgage obligation of Forty-five Thousand dollars ($45,000.00) to the Irwin Union Mortgage Company, and a second mortgage obligation of Twelve Thousand dollars ($12,000.00) to Bank One, f.k.a. NBD. The terms of the Parties' Separation Agreement which accomplished this transfer provided that:

> Husband shall pay, indemnify and hold Wife absolutely harmless from the following debts and obligations: NBD; Irwin Mortgage; and all his personal debts and obligations.

In addition to this clause, the Parties' Separation Agreement also specifically refer-

enced the Parties' marital residence and provided that:

> Husband shall pay, indemnify and hold absolutely harmless Wife from any expense, loss, claim or liability whatever arising from, or in any way connected with, said real estate.

For a short period following the entry of the Parties' decree of dissolution, the Defendant made payments on the Parties' former marital residence in accordance with his obligation thereunder. However, sometime in 1999, the Defendant, because of a combination of unfortunate circumstances, which included the Defendant losing his job because of back problems, ceased making payments on the Parties' marital home, which in turn, precipitated him filing for relief under Chapter 7 of the United States Bankruptcy Code.[1] Thereafter, in response to the Defendant's bankruptcy petition, the Plaintiff filed the instant action seeking to have the Defendant's obligations on the loans secured against the Parties' former marital residence, and for which the Plaintiff was jointly liable, held nondischargeable on the basis that such obligations are in the nature of support for purposes of 11 U.S.C. § 523(a)(5)(B). As support for this proposition, the Plaintiff called this Court's attention to the following provision of the Parties' separation agreement:

> All payments called for in this Agreement, including payment of marital obligations shall be construed as spousal support and shall not be dischargeable in bankruptcy under 11 U.S.C. § 523(a)(5), nor shall they be included as income or deductible to either pay for income tax purposes.
>
> No further spousal support shall be paid or received by either party.

---

1. The Defendant no longer lives in the home, which is currently in the process of being sold

to satisfy the obligations attached thereto.

Other than the above clause, no other mention is made of spousal support in the Parties' Separation Agreement; however, in additional support of her position (i.e., that the Defendant's assumption of marital debt was in the nature of support), the Plaintiff testified to the fact that she had only agreed not to take direct spousal support from the Defendant on the specific condition that the Defendant assume all of the obligations secured against the Parties' marital residence. As evidence of this intention, it was shown that the Plaintiff, although employed, does not have alone, and never had, the ability to pay the obligations secured against the Parties' former marital home.

In opposition to the Plaintiff's position, the Defendant testified to the fact that he was never represented by legal counsel before, and up until the time, the Parties' separation agreement was executed, and that the Plaintiff was the party primarily responsible for the terms set forth therein. In addition, the Defendant asserts that his obligation to assume the loans secured against the Parties' former marital residence have none of the traditional indicia of support. Specifically, the Defendant pointed out that he does not have many marketable job skills; at the time of the Parties' divorce, the relative incomes of the Parties were about equal; and the Plaintiff, while married to the Defendant, handled all of the Parties' finances. In addition, the Defendant, at the Trial held on this matter, called this Court's attention to the fact that the proceeds obtained from the second mortgage against the Parties' marital residence were specifically used to pay marital debts.

### LAW

**Section 523. Exceptions to discharge.**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]

### DISCUSSION

Proceedings brought to determine the dischargeability of a particular debt are core proceedings pursuant to 28 U.S.C. § 157(b)(2). Thus, this case is a core proceeding.

■ For readily apparent reasons of public policy, Congress chose to exclude from the scope of a bankruptcy discharge, support obligations which arise "in connection with a separation agreement, divorce decree or other order of a court of record." *Rand v. Lombardo (In re Lombardo)*, 224 B.R. 774, 782 (Bankr.S.D.Cal.1998) (section 523(a)(5) embodies an overriding public policy favoring the enforcement of marital obligations). However, in an effort to promote the "fresh start" policy of the Bankruptcy Code, Congress also provided, in subparagraph (B) of § 523(a)(5), that before such a debt will be found to be excepted from a bankruptcy discharge, it must be shown that the debt was "actually in the nature of alimony, maintenance or support[.]" In this regard, the party contesting the dischargeability of the martial debt

bears the burden to establish, by a preponderance of the evidence, that he or she has complied with the requirements of subparagraph (B) of § 523(a)(5). *Schwartz v. Schwartz (In re Schwartz)*, 217 B.R. 533, 536 (Bankr.E.D.Tex.1998).

In *Long v. Calhoun (In re Calhoun)*, the Sixth Circuit Court of Appeals addressed the meaning of the phrase "actually in the nature of alimony, maintenance or support" as set forth in § 523(a)(5)(B), and held that the following elements must be met in order for a debt to meet this requirement:

> (1) the intent of the state court or the parties was to create a support obligation;
>
> (2) the support provision has the actual effect of providing necessary support;
>
> (3) the amount of support is so excessive as to be unreasonable under traditional concepts of support; and
>
> (4) the amount of support is unreasonable, how much of it should be characterized as nondischargeable for the purposes of federal bankruptcy law.

715 F.2d 1103 (6th Cir.1983). With respect to these elements, however, the Sixth Circuit Court of Appeals, in recognition of the fact that Congress never intended for a bankruptcy court to sit as a super divorce court, severely limited a court's power to find that an obligation specifically delineated as support, as is the situation here, was not actually intended as support. In particular, in *Fitzgerald v. Fitzgerald (In re Fitzgerald)*, the Sixth Circuit held that the second step from above, which is referred to as the "present needs inquiry," is not relevant where an

obligation is specifically labeled as alimony, maintenance or support, and the court or the parties intended to create a support obligation. 9 F.3d 517, 521 (6th Cir.1993).[2] Later, in the case of *Sorah v. Sorah (In re Sorah)*, the Sixth Circuit further refined this holding, stating:

> There is a saying that if something looks like a duck, walks like a duck, and quacks like a duck, then it is probably a duck. In determining whether an award is actually [in the nature of] support, the bankruptcy court should first consider whether it 'quacks' like support. Specifically, the court should look to the traditional state law indicia that are consistent with a support obligation. These include, but are not necessarily limited to, (1) a label such as alimony, support, or maintenance in the decree or agreement, (2) a direct payment to the former spouse, as opposed to the assumption of a third-party debt, and (3) payments that are contingent upon such events as death, remarriage, or eligibility for Social Security benefits.
>
> An award that is designated as support by the state court and that has the above indicia of a support obligation (along with any others that the state support statute considers) should be conclusively presumed to be a support obligation by the bankruptcy court. A non-debtor spouse who demonstrates that these indicia are present has satisfied his or her burden of proving that the obligation constitutes support within the meaning of § 523, and is thus nondischargeable. The burden then shifts to the debtor spouse to demonstrate that

---

**2.** This type of situation should be distinguished from the situation where there exists no actual label of support. Under this scenario, the bankruptcy court is to look behind the provisions contained in the separation agreement or divorce decree to determine if it

was both the intent of the parties to create a support obligation, and whether, under the second part of the *In re Calhoun* test, the provision has the actual effect of providing necessary support.

although the obligation is of the type that may not be discharged in bankruptcy, its amount is unreasonable in light of the debtor spouse's financial circumstances.

163 F.3d 397, 401 (6th Cir.1998) (citation omitted).

■■■■ Thus to summarize the above cases, the creditor-spouse bears the initial burden of showing that the obligation to be held nondischargeable is in the nature of support. In the instant situation, where there exists a specific provision of support, this burden may be met by establishing that the traditional state law indicia of support are present. In the main, these indicia, as provided for in *In re Sorah*, are: (1) a label such as alimony, support, or maintenance in the decree or agreement, (2) a direct payment to the former spouse, as opposed to the assumption of a third-party debt, and (3) payments that are contingent upon such events as death, remarriage, or eligibility for Social Security benefits. *Id.* If the creditor-spouse's burden thereunder is met, the debtor-spouse, in conformance with the third part of the test enumerated in *In re Calhoun*, must come forward with evidence showing that the amount to be paid is unreasonable in light of his or her financial circumstances. Thereafter, if the debtor-spouse establishes that this requirement has been met, the support obligation will be discharged to the extent it is unreasonable.

■■■■ In conformance with the foregoing standard, the Plaintiff argues that the clause provided in the Parties' Separation Agreement which states that: "[a]ll payments called for in this Agreement, including payment of marital obligations shall be construed as spousal support and shall not be dischargeable in bankruptcy under 11 U.S.C. § 523(a)(5)," mandates a finding that the obligations at issue in this case are, in fact, support payments for purposes of § 523(a)(5)(B). With regards to this argument, the Court agrees that in conformance with the *In re Sorah* decision, the label the parties or the state court attaches to a payment is to be accorded a great deal of weight for purposes of a § 523(a)(5)(B) analysis. In fact, according to the *In re Sorah* decision, to determine the nature of a marital obligation, the first and primary indicia to be considered is the label attached to the obligation. *Id.* However, the *In re Sorah* decision does not stand for the proposition that the label attached to a payment obligation is completely dispositive as to the nature of that obligation. In fact, as stated above, two of the three indicia specifically enumerated in *In re Sorah* look beyond the label a state court attaches to the underlying marital obligation. These indicia being: "a direct payment to the former spouse, as opposed to the assumption of a third-party debt, and payments that are contingent upon such events as death, remarriage, or eligibility for Social Security benefits." *Id.* For purposes of this case, these latter two indicia clearly go against a finding that the obligations at issue in this case are in the nature of support as no direct payments are called for under the Parties' Separation Agreement, and the Defendant's assumption of the debts on the marital home is in no way conditioned upon the Plaintiff's death or remarriage. Notwithstanding, this Court, given the strong policy against discharging marital obligations, will not find, as a matter of law, that a creditor-spouse who satisfies only the first of the three indicia enumerated in *In re Sorah*, is automatically precluded from holding a nondischargeable obligation for purposes of § 523(a)(5)(B); this principle is in conformance with the language in the *In re Sorah* opinion which states that the indicia listed therein are not exclusive. In this regard, this Court has applied the

following factors to determine whether an obligation is in the nature of support for purposes of § 523(a)(5)(B):

(1) the disparity of earning power between the parties;

(2) the need for economic support and stability;

(3) the presence of minor children;

(4) marital fault;

(5) the nature of the obligation assumed;

(6) the structure and language of the parties' agreement or the court's decree;

(7) whether other lump sum or periodic payments were also provided;

(8) the length of the marriage;

(9) the age, health and work skills of the parties;

(10) the adequacy of support absent the debt assumption;

(11) evidence of negotiations or other understandings as to the intended purposes of the assumption.

*Luman v. Luman (In re Luman)*, 238 B.R. 697, 706 (Bankr.N.D.Ohio 1999).[3]

■ Applying these factors to the case at hand, it is clear that a couple of them clearly cut in favor of a finding that the Defendant's assumption of the debts secured against the Parties' former marital home were intended as support. By way of example, the Plaintiff has custody of the Parties' minor child, and the length of the Parties' marriage-being ten (10) years in duration-was relatively long. However, after considering the above factors as they relate to the particular facts of this case, it is clear that the vast majority of the above-stated factors clearly go against a finding that the obligations at issue in this case were intended as support. In particular, the evidence presented in this case clearly shows that the disparity of earning power

between the Parties is not great; neither Party is relatively old; the Plaintiff, if anything, is in better physical health than the Defendant; the Defendant does not have a great deal of marketable job skills; the Plaintiff's economic conditions, although not necessarily strong, are in a better condition than the Defendant's; the nature and type of the obligation assumed in this case is not ordinarily deemed a support obligation (i.e., at least one of the obligations was specifically used to pay off the Parties' marital debts); and besides the Plaintiff's naked assertion to the contrary, there is no evidence that the Parties negotiated or had an understanding that the Defendant's assumption of the obligations secured by the marital residence would be in the nature of support. With regards to this last factor, the Court does sympathize with the Plaintiff that she did not anticipate the possibility that the Defendant would seek to discharge his obligation under the Parties' Separation Agreement. However, such a consideration does not, in and of itself, change the nature of the obligation. In addition, if there was ever any doubt as to the nature of the Defendant's obligation, the Court observes that contrary to the actual tax consequences of a true alimony/support payment, the Parties specifically provided in their Separation Agreement that the Defendant's payments on the marital home obligation would not be included as income for the Plaintiff, nor would the payments be deductible for the Defendant. *See* 26 U.S.C. § 71(a) (providing that "[g]ross income includes amounts received as alimony or separate maintenance payments."), and 26 U.S.C. § 271(a) (providing that "there shall be allowed as a deduction an amount equal to the alimony or separate maintenance payments paid during such individual's taxable year.") Accordingly,

---

**3.** Recently, in *Bailey v. Bailey (In re Bailey)*, 254 B.R. 901, 2000 Fed.App. 0013P (2000),

the Bankruptcy Panel for the Sixth Circuit cited, in part, favorably to these factors.

and stated to the point: Although the Parties's Separation Agreement attempts to label the Defendant's payment obligation on the marital residence as support, since most of the normal indicia that are associated with a support obligation are not present in this case, the Court cannot find that it was the Parties' mutual intent to create, for purposes of § 523(a)(5), a support obligation. As a result, the Defendant is entitled to a bankruptcy discharge on the obligations at issue herein.

In reaching the conclusions found in this Opinion, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

***ORDERED*** that the obligation of the Defendant, Clifford Jones, Jr., to the Plaintiff, Jill L. Jones, to assume the debts which were secured against the Parties' former marital residence, are hereby determined not to be debts in the nature of support for purposes of 11 U.S.C. § 523(a)(5)(B), and thus such debts, be and are hereby, determined to be DISCHARGED.