**In re Nancy Kay HANJORA, Debtor.**

**Daniel Hanjora, Plaintiff,**

v.

**Nancy Kay Hanjora, Defendant.**

**No. 00–3305.**

United States Bankruptcy Court, N.D. Ohio.

Nov. 5, 2001.

James C. King, Lima, OH, for plaintiff.

Randy L. Reeves, Lima, OH, for defendant.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Plaintiff's Motion for Summary Judg-

ment, and the Defendant's Response thereto. This Court has now had the opportunity to review the arguments of Counsel, the exhibits, as well as the entire record of the case. Based upon that review, and for the following reasons, the Court finds that the Plaintiff's Motion for Summary Judgment should be Denied.

### FACTS

The Plaintiff and the Defendant/Debtor are former husband and wife. On August 8, 2000, very shortly after the Parties' marriage ended, the Defendant/Debtor, Nancy Kay Hanjora (hereinafter referred to as the "Debtor"), filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Court. In the bankruptcy petition filed with the Court, the Debtor listed a debt owed to the Plaintiff, Daniel A. Hanjora (hereinafter referred to as the "Plaintiff"), in an unknown amount. The Plaintiff then, on November 27, 2000, filed a complaint in this Court seeking a determination that this debt, as an obligation arising from the termination of a marriage, was nondischargeable for purposes of bankruptcy law. On this matter, the Plaintiff, in accordance with Bankruptcy Rule 7056, filed a motion for Summary Judgment with an accompanying Memorandum in Support. In response, the Debtor filed a Memorandum in Opposition. Form these Memoranda, together with the pleadings submitted by the Parties, the relevant facts underlying the Plaintiff's complaint to determine dischargeability were presented to the Court as follows:

The Plaintiff and the Debtor were married in 1989; two children were born as issue from this marriage. On May 26, 2000, the Parties' entered into a separation agreement. At the time the Parties entered into this agreement, it is undisputed that the Plaintiff's annual income was Thirty Thousand Five Hundred Seventy-four dollars ($30,574.00). By comparison, the Debtor's income was somewhat higher, standing at Forty-three Thousand Three Hundred Forty-nine and 22/100 dollars ($43,349.22) per year. (With respect to her annual salary, however, the Debtor asserts that at the time of the filing of her bankruptcy petition, she was only receiving disability pay which was considerably lower than her normal salary.) On July 18, 2000, the Allen County Court of Common Pleas, in terminating the Parties' marriage, adopted, in full, those terms contained in the Parties' separation agreement; these terms, as they are relevant to this case, provided as follows:

First, the Parties instituted a shared parenting plan for all matters relating to their children. Second, neither party was to owe the other party spousal support. Specifically, the Parties' separation agreement set forth these clauses:

> The parties hereto release each other of all obligations of support, maintenance, cohabitation, and of all other claims, rights, and duties arising from the marital relationship, except as herein provided.

> Neither party shall be obligated to pay spousal support to the other party.

> Each party shall be responsible for the payment of his or her own attorney fees.

> This agreement shall be a full and complete settlement of all alimony and property rights between the parties.

Finally, with respect to the Parties' assets and debts, three major property allocations were made: First, the Parties' separation agreement provided that the Debtor was to assume, and thereafter hold the Plaintiff harmless on numerous consumer credit obligations totaling over Sixty Thousand dollars ($60,000.00); these debts are the specific obligations which are at issue in this adversary proceeding.

Second, each party was permitted to keep their interest in any employee benefit packages, including retirement accounts, free from the claims of the other party. Finally, the Plaintiff was awarded the Debtor's entire interest in the Parties' marital home.

With respect to the above provisions, these two additional facts were also brought to the Court's attention: First, the marital residence awarded to the Plaintiff in the Parties' divorce had approximately Forty-five Thousand dollars ($45,000.00) of equity in it. In return for receiving this equity free from any claims of the Debtor, the Plaintiff was required to assume two mortgages totaling Seventy-seven Thousand dollars ($77,000.00). Second, it was brought to the Court's attention that subsequent to the time of the Parties' divorce, the Plaintiff has had complete custody of the Parties' two minor children.

## LAW

### Section 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance

with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

> (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]

## DISCUSSION

The Plaintiff's complaint to have those consumer debts assumed by the Debtor held nondischargeable is based solely on the exception to discharge contained in § 523(a)(5).[1] Proceedings brought under this section are deemed core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Accordingly, this Court has the jurisdictional authority to enter final orders in this matter.

Under § 523(a)(5), generally any support obligation owed to a former spouse is not entitled to the benefits of a bankruptcy discharge; this section thus implements the general bankruptcy policy of favoring domestic support obligations over the debtor's need for a fresh start. *Bullock v. Hodge (In re Hodge)*, 265 B.R.

---

1. Marital debts may also, if the appropriate conditions are met, be held nondischargeable under 11 U.S.C. § 523(a)(15). However, a cause of action under this section, unlike § 523(a)(5), must be "filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)." BANK.R.CIV P. 4007(c). In the absence of fault on the part of the court, this time limit is considered absolute. *Nardei v. Maughan (In re Maughan)*, 268 B.R. 128 (6th Cir. BAP 2001) *Roberts v. Ginsburg (In re Ginsburg)*, 238 B.R. 358, 361–62 (Bankr.N.D.Ohio 1999). Therefore, in this case, since the Plaintiff filed his complaint outside the time limit set forth in Bankruptcy Rule 4007(c), it must be presumed that the sole ground upon which the Plaintiff relies for his cause of action is § 523(a)(5).

908, 911 (Bankr.N.D.Ohio 2001). The scope of § 523(a)(5), however, is limited to only those debts which are "actually in the nature" of support. 11 U.S.C. § 523(a)(5)(B). In this regard, federal, and not state law controls the issue of whether an obligation is "actually in the nature" of support. *Ewing v. Ewing (In re Ewing)*, 180 B.R. 443, 446 (Bankr. E.D.Va.1994).

■ In *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (6th Cir.1983), the Sixth Circuit Court of Appeals specifically addressed what types of martial obligations, for purposes of bankruptcy law, are "actually in the nature" of support. In doing so, the Court held that, at a minimum, the parties to the separation agreement must have intended to create a support obligation. *Id.* at 1109 (the initial inquiry must be to ascertain whether the state court or the parties to the divorce intended to create an obligation). To determine whether the requisite intent exists, the Sixth Circuit later held in *Sorah v. Sorah (In re Sorah)*, 163 F.3d 397, 401 (6th Cir.1998), that a bankruptcy court should "look to the traditional state law indicia that are consistent with a support obligation." According to the Court in *In re Sorah* these traditional indica of support include, but are not necessarily limited to, (1) a label such as alimony, support, or maintenance in the decree or agreement, (2) a direct payment to the former spouse, as opposed to the assumption of a third-party debt, and (3) payments that are contingent upon such events as death, remarriage, or eligibility for Social Security benefits. *Id.*

■ As applied to this case, it is clear that in no way shape or form did the Parties' separation agreement provide that the Plaintiff was to be awarded spousal support. In addition, it is clear that the Debtor simply assumed, without any direct obligation to pay the Plaintiff, the Parties' consumer credit debt. Furthermore, with respect to the last consideration set forth in *In re Sorah*, the Debtor's obligation to pay the consumer credit debt did not terminate upon the occurrence of an event such as her remarriage, death, or eligibility for Social Security benefits. As a result, all of the considerations specifically set forth in *In re Sorah* go against ruling in favor of the Plaintiff.

■ In addition, and a further detriment to the Plaintiff's position, is the fact that in *In re Sorah* the Sixth Circuit Court of Appeals strongly admonished bankruptcy courts from second-guessing those determinations made by state courts concerning the award of spousal support; in the actual words of the Sixth Circuit: a bankruptcy court should not "assume the role of a psychological examiner, probing the state court's decision for linguistic evidence of ulterior motives." *Id.* at 402. To do otherwise, it was noted, would place the bankruptcy court in the role of a super-divorce court. *Id.* In accordance therewith, this Court has held:

> when a divorce decree or separation agreement holds that no spousal support shall be awarded to either party, any obligations contained therein should be viewed as a property settlement-and thereby subject to 11 U.S.C. § 523(a)(15)—unless it can be clearly and unequivocally shown by the context of the divorce decree or separation agreement that it was the intent to create a support obligation.

*In re Hodge*, 265 B.R. at 912.

In support of her compliance with above standard, the Plaintiff makes what are essentially three different arguments. First, the Plaintiff points out that at the time of the Parties' divorce, he earned considerably less money than the Debtor. Second,

the Plaintiff called this Court's attention to the fact that he is the custodial parent of the Parties' two minor children. Finally, the Debtor asserts that the "hold harmless" provision contained in the Parties' separation agreement shows an intention to create a support obligation.

The Court, however, in light of the Sixth Circuit's holding in *In re Sorah*, does not find that these arguments have sufficient persuasive force to warrant a finding that the obligation of the Debtor to assume the Parties' consumer credit obligations is in the nature of support for purposes of § 523(a)(5). In this regard, a few observations are in order. To begin with, while income and custody concerns certainly bear on an award of spousal support,[2] this Court observes that it is extremely common for a parent to be awarded custody of the parties' minor child(ren) without also being awarded spousal support. Similarly, and as applied to the particular facts of this case, the disparity in income between the Parties, although not insignificant, is not extremely large. Finally, the Court observes that "hold harmless" clauses, such as the one contained in the Parties' separation agreement, do not, standing alone, create a support obligation. *Shimp v. Shimp (In re Shimp)*, 59 B.R. 553, 555–56 (Bankr.N.D.Ohio 1986); *Semler v. Semler (In re Semler)*, 147 B.R. 137, 139 (Bankr.N.D.Ohio 1992). In declining, however, to find the obligations assumed by the Debtor to be in the nature of support, the Court wishes to make one additional point for the record.

■ Given the short proximity between the Parties' divorce and the filing of the Debtor's bankruptcy petition, the Court strongly questions whether the Debtor ever actually intended to pay the Parties'

consumer loan debts as was required under the terms of the Parties' separation agreement. Such actions (or inactions) obviously raise serious questions of fraud. Notwithstanding, § 523(a)(5) does not make allowances for a party's fraud; therefore, regardless of the Debtor's less than admirable intentions, the Court is constrained to follow the law, and thus permit the Debtor to discharge her consumer credit obligations.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that the Motion for Summary Judgment submitted by the Plaintiff, Daniel Hanjora, be, and is hereby, DENIED.

It is **FURTHER ORDERED** that the Complaint filed by the Plaintiff, Daniel Hanjora, be, and is hereby, DISMISSED.

---

2. In determining whether to award spousal support courts may consider such things as a disparity in income and which party is the

residential parent. *Jones v. Jones (In re Jones)*, 265 B.R. 746, 751–52 (Bankr. N.D.Ohio 2001).