**In re Mark W. TRAUT, Debtor.**

**Loretta Courtney, Plaintiff,**

v.

**Mark Traut, Defendant.**

**Nos. 01–3246, 01–35644.**

United States Bankruptcy Court, N.D. Ohio.

Aug. 5, 2002.

---

**3.** *See, e.g., Estate of Wood v. Commissioner,* 909 F.2d 1155 (8th Cir.1990).

R. Nigel Davies, Pemberville, OH, J. Douglas Ruck, Pemberville, OH, for plaintiff.

### DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Trial on the Plaintiff's Complaint to De-

termine the Dischargeability of certain marital debts that the Defendant/Debtor was ordered to pay pursuant to a decree of divorce entered on August 20, 1996. In attendance at the Trial were Douglas Ruck as counsel for the Plaintiff, Loretta Courtney; and the Defendant/Debtor, Mark Traut, who was unrepresented by legal counsel. From the evidence presented at this Trial, the Court, pursuant to Bankruptcy Rule 7052, makes the following factual findings:

The Debtor is a middle-age man who, from all appearances, is in good health. In 1978 the Debtor and the Plaintiff were married; two children, who are now emancipated, were born as issue from this marriage.

On August 20, 1996, the Plaintiff and the Debtor were granted a divorce. (Plaintiff's Exhibit 1). In the Parties' divorce decree, it was stated that the Plaintiff was to be awarded, "in lieu of spousal support," the sum of $4,000.00 within 90 days of the divorce. (Plaintiff's Exhibit 1, at pg. 4.). Additionally, the Plaintiff was also awarded the sum of $13,000.00 for her share of equity in certain real property owned by the Parties. (Plaintiff's Exhibit 1, at pg. 3). However, since the time of the Parties' divorce, the Debtor, except for some minor payments, has failed to pay these obligations. As result, it was stipulated, for purposes of the Trial held on this matter, that the Debtor owed to the Plaintiff the respective sums of $3,042.40 and $12,159.29.

At the time of the Parties' divorce, the Defendant worked for GTE, from which he had a gross annual salary of $37,368.00. (Plaintiff's Exhibit 1, at pg. 3). However, since at least the year 1999, the Debtor has been employed as a truck driver with Globe Trucking. For the years 1999 through the year 2001, the Debtor, from his position with Globe Trucking, has produced the following income:

In the year 1999, the Debtor earned approximately $37,000.00. (Plaintiff's Exhibit 12, at pg. 5).

In the year 2000, the Debtor earned over $33,000.00. (Plaintiff's Exhibit 12, at pg. 3). Also, during this same year the Debtor received $4,500.00 from the Wood County Child Support Enforcement Agency for an alleged arrearage in child support. (Plaintiff's Exhibit 4, at pg. 4).

In the year 2001, the Debtor, again, earned over $33,000.00. (Plaintiff's Exhibit 12, at pg. 1).

With respect to the Debtor's salary, no indication was given that his income would significantly decrease in the future. As for expenditures, the Debtor claims the following expenses:

| | |
|---|---|
| Rent | $ 500.00 |
| Utilities | $ 222.00 |
| Telephone | $ 75.00 |
| Home Maintenance | $ 25.00 |
| Food | $ 200.00 |
| Clothing | $ 45.00 |
| Laundry/Dry Cleaning | $ 15.00 |
| Medical/Dental | $ 293.34 |
| Transportation | $ 70.00 |
| Student Loan Payment | $ 50.00 |
| Auto Insurance | $ 113.25 |
| Disability Insurance | $ 78.00 |
| Total | $1,686.59 |

With respect to the Plaintiff, the evidence presented in this case shows that she and her present husband have, after factoring in allowable deductions,

$3,112.04 per month in take-home income. On the other side of the equation, the Plaintiff and her husband have reasonable monthly expenses of $2,856.83. No evidence, however, was offered concerning the assets of the Plaintiff.

On September 30, 1997, a finding of contempt was entered against the Debtor on account of his failure to pay his marital obligations; specifically, the $4,000.00 dollars awarded to the Plaintiff in lieu of spousal support and the $13,000.00 dollars awarded to the Plaintiff for her share of the equity in the Parties' real property. In finding the Debtor in contempt, a specific finding was made by the state court that the Debtor had voluntarily lost his job at GTE. (Plaintiff's Exhibit 3, at pg. 2). Additionally, on May 25, 2001, the Debtor was again found in contempt for his failure to pay the Plaintiff the moneys required under the terms of the Parties' divorce decree. (Plaintiff's Exhibit 5, at pg. 1).

Sometime after the Parties' divorce, the Debtor received approximately $18,000.00 dollars from a pension plan he had maintained at GTE. This money was then, in almost its entirety, spent on himself and his adult children. (Plaintiff's Exhibit 4, at pg. 3). In this regard, no accounting was provided to the Court for these expenditures.

On September 12, 2001, the Debtor filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code.

## LEGAL DISCUSSION

The Plaintiff's Complaint, which seeks to except from discharge certain marital debts that the Debtor was ordered to pay in the Parties' decree of divorce, is premised on the applicability of two Code sections: 11 U.S.C. § 523(a)(5) and 11 U.S.C. § 523(a)(15). Respectively, these statutory exceptions to discharge provide that:

(a) A discharge under section 727, 1141, 1228[a] 1228(b), or 1328(b) of this section does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(B) such debt includes liability designated as alimony, maintenance or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court record, a determination made in accordance with State or territorial law by a government unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental conse-

quences to a spouse, former spouse, or child of the debtor[.]

Proceedings brought under these sections are deemed core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Beginning with § 523(a)(5), the applicability of these Code sections will now be addressed.

▇▇▇▇ Under § 523(a)(5), support obligations owed to a former spouse are not entitled to the benefits of a bankruptcy discharge, thus setting forth the general bankruptcy policy of favoring marital obligations over a debtor's need for a fresh start. *Hanjora v. Hanjora (In re Hanjora)*, 276 B.R. 822, 825 (Bankr.N.D.Ohio 2001). The scope of § 523(a)(5), however, is limited in an important respect: Only those debts which are "actually in the nature" of support are excluded from the benefits of a bankruptcy discharge. 11 U.S.C. § 523(a)(5)(B). Thus, merely because a marital obligation is labeled as support does not mean that it will be found to be a support obligation for purposes of § 523(a)(5). Conversely, an obligation that is not specifically labeled as support may still found to be a support obligation under § 523(a)(5).

▇▇▇▇ In *Long v. Calhoun (In re Calhoun)*, the Sixth Circuit Court of Appeals held that four conditions must be met in order to establish that a debt is "actually in the nature" of support as that term is used in § 523(a)(5)(B):

(1) the intent of the state court or the parties was to create a support obligation;

(2) the support provision has the actual effect of providing necessary support;

(3) the amount of support is not so excessive as to be unreasonable under traditional concepts of support; and

(4) if the amount of support is unreasonable, how much of it should be characterized as nondischargeable for purposes of federal bankruptcy law.

715 F.2d 1103 (6th Cir.1983). As it pertains to these requirements, the particular question raised in this case is whether an obligation labeled in a divorce decree as a payment in "lieu of spousal support" qualifies as a debt "actually in the nature" of support. After considering the matter in light of the considerations set forth *In re Calhoun,* the Court, for the reasons set forth below, concludes that it does.

▇▇▇▇ First, a payment in lieu of spousal support, although not fitting the traditional indicia of a support obligation—e.g., a periodic payment that is subject to termination upon the death or remarriage of the spouse—necessarily has the effect of providing support. Along this same line, an obligation paid in "lieu of spousal support" would clearly not have arisen "but for" the fact there existed an intent to provide a measure of support to a former spouse. Additionally, in this particular case, given the Debtor's salary of over Thirty Thousand dollars ($30,000.00), together with the length of the Parties' marriage (app. 18 years), the Four Thousand dollars ($4,000.00) that the Debtor was order to pay in "lieu of spousal support" does not seem to be unreasonable under a traditional concept of support. Finally, it is observed that other courts, when addressed with a similar provision, have held that such an obligation qualifies as a nondischargeable obligation under § 523(a)(5). *See Reiff v. Reiff (In re Reiff)*, 166 B.R. 694, 696 (Bankr.W.D.Mo.1994). Therefore, based upon these considerations, this Court holds that, as a matter of law, the obligation in the Parties' decree of divorce which is specified as a payment in "lieu of spousal support" constitutes a support obligation within the meaning of § 523(a)(5). Accordingly, this obligation constitutes a

nondischargeable debt for purposes of bankruptcy law.

◼ The next issue for the Court to address concerns the applicability of § 523(a)(15) to the Thirteen Thousand dollar ($13,000.00) martial obligation which the Debtor was ordered to pay to the Plaintiff for her share of equity in the Parties' marital property. Under § 523(a)(15) generally those martial debts which are not in the nature of support, but which still arise in connection with a divorce decree are likewise excluded from the scope of a bankruptcy discharge. However, unlike the exception to discharge set forth in § 523(a)(5), which is absolute, § 523(a)(15) provides for two exceptions to nondischargeability: a martial debt is dischargeable if either (1) a debtor cannot afford to pay the debt, or (2) if discharging the debt would benefit the debtor more than it harms the debtor's spouse and children. For purposes of an analysis under § 523(a)(15), the creditor bears the initial burden to show that the debt at issue arose in connection with a divorce. Once this burden is met, however, the burden then shifts to the debtor to establish that either of the above-stated defenses set forth in the statute are applicable. *See, e.g., Fellner v. Fellner (In re Fellner),* 256 B.R. 898, 902 (8th Cir. BAP 2001). In this case, since it is clear that the Debtor's obligation arose from the Parties' divorce decree, the Court's analysis will focus solely on the exceptions to nondischargeability set forth in § 523(a)(15).

◼ The first exception to nondischargeability under § 523(a)(15) is set forth in subparagraph (A) and provides that a debtor is entitled to a discharge of a marital obligation if he or she "does not have the ability to pay such debt from income or property ... not reasonably necessary to be expended for the maintenance or support of the debtor or a depen-dent of the debtor ... [.]" As the language of this section clearly shows, two figures are needed to ascertain whether a debtor has the "ability to pay" the marital debt in question: (1) a debtor's income; and (2) a debtor's reasonable expenses. The difference between these figures is then set against the amount of the marital debt at issue to determine whether or not the debtor can repay the marital debt within a reasonable amount of time. *Bubp v. Romer (In re Romer),* 254 B.R. 207, 212 (Bankr.N.D.Ohio 2000). In determining a debtor's income and expense, this Court has followed, as have other bankruptcy courts, the "disposable income" test of § 1325(b)(2) (which is utilized to determine how much income a debtor must devote toward a Chapter 13 repayment plan) as the language of this section mirrors the "ability to pay" language of § 523(a)(15)(A). *Miller v. Miller (In re Miller),* 247 B.R. 412, 414 (Bankr.N.D.Ohio 2000); *Spiezio v. Vitek (In re Vitek),* 271 B.R. 551, 560 (Bankr.S.D.Ohio 2001).

◼ Under the "disposable income" test of § 1325(b)(2), a court, in determining a debtor's income and expenses, is to take into account all relevant circumstances, while keeping in mind a couple of related principles. First, income may be imputed to a debtor if it is found that the debtor has become voluntarily underemployed or if the debtor is not earning up to their full potential within their occupational profile. *See Hart v. Molino (In re Molino),* 225 B.R. 904, 908 (6th Cir. BAP 1998); *Burton v. Burton (In re Burton),* 242 B.R. 674, 682 (Bankr.W.D.Mo.1999). Second, as it pertains to expenses, a debtor, although not expected to live in poverty, is expected to tighten their financial belt, and thus do without many amenities to which they may have otherwise become accustomed. *In re Bottelberghe,* 253 B.R. 256, 263 (Bankr. D.Minn.2000).

■ In applying the above principles to the instant case, a couple of problems from the Debtor's perspective are readily apparent. First, the evidence in this case shows that the Debtor became voluntarily underemployed after he left his job at GTE. As a result, it would be entirely proper in this case to impute to the Debtor the difference in the amount of income that the Debtor earns from his present job as compared to his former salary at GTE. Secondly, and even more disconcerting to the Court, is the fact that the Debtor had, in the recent past, sufficient resources available to pay his marital obligation yet, for no justifiable reason, failed to do so. In particular, the facts of this case show that not long after the Parties' divorce, the Debtor received approximately Eighteen Thousand dollars ($18,000.00) from a pension plan he had maintained at GTE. In this regard, it is observed that according to the specific statutory language of § 523(a)(15)(A), any analysis conducted thereunder, in addition to looking to the Debtor's income, must also take into consideration the amount of property that the debtor had available to pay the marital debt.

■ However, even setting the above concerns aside, it is apparent that the Debtor has the present ability to pay his marital debt to the Plaintiff. This conclusion is based upon the fact that the Debtor's annual income for the last few years has been at least Thirty-three Thousand dollars ($33,000.00) per year which, after factoring in allowable deductions at 30% of gross income, still amounts to One Thousand Nine Hundred Twenty-five dollars ($1,925.00) per month in take-home pay for the Debtor. ($33,000.00 × .30 ÷ 12). Thus, even if the Court were to take the Debtor's total enumerated monthly expenses at face value (i.e., $1,686.59), the Debtor still has Two Hundred Thirty-eight and 41/100 dollars ($238.41) per month in disposable income, an amount which is clearly enough to repay his marital debt of Twelve Thousand One Hundred Fifty-nine and 29/100 dollars ($12,159.29) in a reasonable amount of time (i.e., just over four years). Therefore, for the above stated reasons, it is the decision of this Court that the Debtor is not entitled to a discharge of his marital debt under § 523(a)(15)(A). Accordingly, the Court now turns to address whether the Debtor is entitled to a discharge of his marital debt pursuant to the second exception to nondischargeability set forth in § 523(a)(15): the balancing test contained in paragraph (B).

■ Section 523(a)(15)(B) provides that a marital debt will be discharged if the benefit to the debtor in discharging such a debt outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor. *See, e.g., In re Molino*, 225 B.R. at 908–09. In conducting an analysis under this standard, this Court has applied what has become to be known as the "standard of living" test to determine if a debtor has met his or her burden under § 523(a)(15)(B). *Melton v. Melton (In re Melton)*, 238 B.R. 686, 695 (Bankr. N.D.Ohio 1999). Under the standard of living test, a court is to compare the parties' respective standards of living to determine if the debtor's standard of living will fall materially below that of the creditor's standard of living if the debt is not discharged. If, after conducting this analysis, the court finds that with the marital debts not discharged, the debtor's standard of living will be greater than or approximately equal to the creditor's standard of living, then the debt should be found to be a nondischargeable obligation under the § 523(a)(15)(B) test. Conversely, if the court concludes that the debtor's standard of living will fall materially below that of the creditor, then the debt should be discharged under 11 U.S.C.

§ 523(a)(15)(B). *In re Molino*, 225 B.R. at 908–09. Although many different factors are relevant in conducting this Test, some of the most important considerations in this respect concern the parties' current income, expenses and available assets. *Id.* at 909. In addition, a court should take into account whether the parties have incurred any expenses for luxury goods and services—e.g., vacations, boats, jewelry.

In applying these considerations to this case, no evidence was presented regarding the assets the respective Parties have available. Moreover, no evidence was offered regarding any luxury goods or services the Parties had recently obtained. Thus, the only information this Court has available to make a determination as to the Parties' respective standards of living concerns the income and expense figures presented to the Court. In this regard, and as set forth above, the Debtor has Two Hundred Thirty-eight and 41/100 dollars ($238.41) per month in "disposable income." Such an amount, however, is very similar to the discretionary income the Plaintiff has available; that is to say, the Plaintiff and her husband, after paying necessary expenses, have just over Two Hundred Fifty dollars ($250.00) per month in excess income. Thus, based upon the similarity of these figures, there is simply no basis for finding that the Debtor's standard of living will fall materially below that of the Plaintiff's if the debt is not discharged. Accordingly, the Court must find that the Debtor has failed to sustain his burden under the exception to nondischargeability set forth in subparagraph (B) of § 523(a)(15).

In summation, the Court finds that the marital obligation which the Debtor was required to pay "in lieu of spousal support" is, in fact, a nondischargeable support obligation within the meaning of § 523(a)(5). Furthermore, with respect to the Debtor's obligation to pay the Plaintiff Thirteen Thousand dollars ($13,000.00) for her share of equity in certain real property owned by the Parties, the Court cannot find that either of the exceptions to nondischargeability set forth in § 523(a)(15) are applicable. Therefore, with respect to both of these debts, the Debtor is not entitled to a bankruptcy discharge. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the legal obligations of the Debtor, Mark W. Traut, to the Plaintiff, Loretta Courtney, concerning those debts enumerated in the Parties' Decree of Divorce (Case No. 95–DR–170, Court of Common Pleas of Wood County, Ohio, dated August 20, 1996), be, and are hereby, determined to be NONDISCHARGEABLE DEBTS under the same terms and conditions as set forth in the Parties' Decree of Divorce.