In Re: Teresa THORNTON, Debtor(s)

Richard Thornton Plaintiff(s)

v.

Teresa Thornton, et al. Defendant(s).

Nos. 04–3042, 03–38249.

United States Bankruptcy Court, N.D. Ohio.

March 4, 2005.

Matthew A. Cunningham, Ottawa, OH, for Plaintiff.

Randy Lee Reeves, Lima, OH, for Teresa E. Thornton.

Beth Ann Schenz, Cleveland, OH, for Fifth Third Auto Leasing.

### DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Trial on the Plaintiff's Complaint to determine the dischargeability of certain marital debts which the Debtor was ordered to assume pursuant to a decree of divorce entered in the latter part of 2002. Plaintiff's complaint is brought pursuant to two statutory exceptions to discharge: (1)

11 U.S.C. § 523(a)(5), as a debt in the nature of support; and (2) 11 U.S.C. § 523(a)(15), as a debt arising from a property settlement in a divorce or separation. After considering the evidence presented at the Trial held on this matter, the applicable law, as well as the entire record of this case, the Court, for the reasons that will now be explained, finds that the marital debts enumerated herein are in the nature of support, and thus nondischargeable pursuant to § 523(a)(5).

## DISCUSSION

Before the Court is the matter as to the dischargeability of two debts: (1) an automobile lease to Fifth–Third Bank; and (2) a Capital One credit-card account. On both these debts, the Parties are jointly liable as to the obligee; but as to each other, the Defendant, pursuant to the decree terminating the Parties' marriage, was ordered to assume her fair share of responsibility for the payment of these debts. (Pl.Ex. No. 1). Presently, the Defendant's proportionate share of the liability owed on the two marital debts stands at $3,808.00 and $6,304.00, respectively. Procedurally, the issue as to dischargeability of these debts was brought in separate adversary proceedings; though, for purposes of the Trial, the matters were tried together, and will be addressed together in this decision, as both the evidence and applicable law on the issue of dischargeability are identical.[1]

## ANALYSIS

A proceeding brought to determine the dischargeability of a particular debt is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I). Thus, this Court has the

jurisdictional authority to enter a final order in this matter.

Bankruptcy law has long favored the honoring of one's familial obligations over the need of the debtor to obtain the fresh-start provided for by the bankruptcy discharge. *See, e.g., Williams v. Kemp (In re Kemp)*, 242 B.R. 178, 183 (8th Cir. BAP 1999), *aff'd*, 232 F.3d 652 (8th Cir.2000). Section 523(a)(5), the first section under which the Plaintiff brings his complaint to determine dischargeability, is a cornerstone of this policy by providing, in relevant part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that-

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]

▮ Restating § 523(a)(5) in plain English, debts for support, whether to a spouse, former spouse, or child, are absolutely barred from the protections of the bankruptcy discharge, subject only to subparagraph (B)'s qualification: that the debts be "actually in the nature" of support. As it concerns this qualification,

---

**1.** For the record, both of the Plaintiff's complaints to determine dischargeability also named the primary creditor as a defendant. These parties, however, are generally not

proper in an action brought to determine dischargeability under either §§ 523(a)(5) or (a)(15). Accordingly, they will be dismissed as parties in both of the Plaintiff's complaints.

both Parties cited this Court to the language of their separation agreement. First, in opposition to the auto lease and credit-card debt actually being in the nature of support, the Defendant pointed this Court to Article 5 of the Parties' separation agreement,—as incorporated in its entirety into the state court's decree of dissolution—which states that, "[n]either party shall be responsible for the payment of spousal support to the other." (Pl.Ex. 1). In response, the Plaintiff called this Court's attention to Article 20 of the Parties' separation agreement, wherein, among other things, it is stated in the legal parlance of § 523(a)(5) that:

> It is the specific intention of the parties that the obligations of the parties, as set forth in the division of assets and liabilities in this agreement, are actually in the nature of alimony, maintenance and support for the parties and minor children, and, thus, are not intended by them to be dischargeable in Bankruptcy. (Pl.Ex. 1).

■■■■ Whether a debt is "actually in the nature" of support when applied to § 523(a)(5)(B) is a question made according to federal law. *Courtney v. Traut (In re Traut)* 282 B.R. 863 (Bank.N.D.Ohio 2002). Under federal law, the labels attached to an obligation, such as those set forth above, are not controlling. Instead, in determining whether an obligation is "actually in the nature" of support, a bankruptcy court is to look to the substance of the debt, not the form. *Bereziak v. Bereziak (In re Bereziak)*, 160 B.R. 533, 536 (E.D.Penn.1993).

When examining the substance of the obligation, the Sixth Circuit, in the case of *Long v. Calhoun (In re Calhoun)*, developed a four-part test. 715 F.2d 1103 (6th Cir.1983). First, the obligation constitutes support only if the state court or parties intended to create a support obligation.

Second, the obligation must have the actual effect of providing necessary support. Third, if the first two conditions are satisfied, the court must then determine if the obligation is so excessive as to be unreasonable under traditional concepts of support. Fourth, if the amount is unreasonable, the obligation is dischargeable to the extent necessary to serve the purposes of federal bankruptcy law. *Jones v. Jones (In re Jones)*, 265 B.R. 746, 749–50 (Bankr. N.D.Ohio 2001) (it is the nondebtor's burden to establish each of these requirements by at least a preponderance of the evidence). *Id.*

However, while *Calhoun* affords a wide range of latitude in looking to the nature of the obligation, the Sixth Circuit has since constrained its approach in the situation where an obligation is specifically designated as support. First, in the case of *Fitzgerald v. Fitzgerald (In re Fitzgerald)*, 9 F.3d 517, 520 (6th Cir.1993), the Sixth Circuit began its analysis by expressing the view that its *Calhoun* test had been too expansively applied by the bankruptcy courts. *Id.* at 520. In making this observation, the Court acknowledged that its test has been criticized as "undue federal interference with state court domestic authority," then explaining that its decision in *Calhoun* was "not intended to intrude into the states' traditional authority over domestic relations . . . ." *Id.* at 520–21.

Later, in *Sorah v. Sorah (In re Sorah)*, 163 F.3d 397, 401 (6th Cir.1998), the Sixth Circuit, when again faced with the situation where an obligation was designated as support, held that so long as there exist ample indicia of support, no further inquiry is necessary; the obligation must be conclusively presumed to be a support obligation. (Although a court should still apply the latter steps in the *Calhoun* test). Noting that "the bankruptcy court does not sit as a super-divorce court," it admon-

ished the practice of a court "assum[ing] the role of psychological examiner, probing the state court's decision for linguistic evidence of ulterior motives." *Id.* at 402. In succinct language the Court articulated, in what has become an oft quoted remark, "if something looks like a duck, walks like a duck, and quacks like a duck, then it is probably a duck . . ." *Id.* at 401.

■ Thus, when applying the holdings of *In re Fitzgerald* and *In re Sorah* to its earlier holding in *In re Calhoun*, the Sixth Circuit's rule on a marital obligation being labeled as support may be distilled down to this: such a label, while not completely dispositive of the issue, is to be afforded a very large degree of deference. Notwithstanding, the Court is still confronted with the particulars of this case where, with respect to the two obligations at issue, inapposite labels exist; one globally stating that absolutely no spousal support obligation would arise as the result of the termination of the Parties' marriage; another of more depth, setting forth that the Defendant's assumption of the two marital debts would be in the nature of support.

■ When, as here, conflicting terms exist in a separation agreement, contractual principles of interpretation are to be applied as a separation agreement is just that: a contract. *Brown v. Brown,* 90 Ohio App.3d 781, 784, 630 N.E.2d 763 (1993). When interpreting a contract, the overriding aim is to give proper effect to the intent of the parties. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.,* 86 Ohio St.3d 270, 273, 714 N.E.2d 898 (1999) ("In construing the terms of any contract, the principal objective is to determine the intention of the parties."). When faced with an ambiguity as the result of an agreement having contradictory terms, the goal in realizing the parties' intent is to harmonize, to the extent possible, the conflicting provisions. *See, e.g., Christe v.*

*GMS Mtg. Co.,* 124 Ohio App.3d 84, 88, 705 N.E.2d 691 (1997).

■ In attempting to harmonize the Parties' intent in this matter, what stands out is the overall structure of the Parties' separation agreement. Specifically, Article 20, creating the support obligation, is significantly more detailed from the non-support clause set forth in Article 5—covering three paragraphs as opposed to just one, and being specifically tailored to the Parties' individual situation as opposed to being simply a boilerplate provision. Given this divergence, it easily follows that when faced with the issue of creating or not creating a support obligation, the Parties, in crafting their separation agreement, placed greater importance and significance on ensuring that those obligations designated in Article 20 as support were treated as such; with such obligations including, but not being limited to the Defendant's requirement to assume the Fifth–Third auto lease and the Capital One credit-card account. Logic would thus dictate that when these two provisions conflicted, the more specific provision—here, Article 20—would control.

■ Practically speaking, this is simply an extension of a couple of basic principles of contractual interpretation. First, with matters of interpretation, whether statutory or contractual, it is the rule that the more specific provision will govern the more general provision. *United States v. Perry,* 360 F.3d 519, 535 (6th Cir.2004); *United States v. Holbrook,* 368 F.3d 415, 431 (4th Cir.2004). Second, the interpretive doctrine of *contra proferentum* holds that any contractual ambiguities should be construed against the drafter, here the drafter being the Defendant as it was related to the Court that it was the Defendant's legal counsel who had drafted the

Parties' separation agreement. *McKay Machine Co. v. Rodman*, 11 Ohio St.2d 77, 80, 40 O.O.2d 87, 89, 228 N.E.2d 304, 307 (1967) (ambiguity must be construed against the drafting party). Consequently, based upon the cumulative weight of these considerations, it can be deduced that, while their agreement was partially ambiguous, the intent of the Parties was to create a support obligation in the Plaintiff's favor with respect to the Defendant's assumption of the Parties' Fifth Third auto lease and the Capital One credit-card account. Therefore, with respect to these two debts, the Sixth Circuit's admonishment in *In re Fitzgerald* and *In re Sorah* to give great deference to a marital debt labeled as support is fully applicable here.

 As to the degree of deference that should be afforded to an obligation designated as support, the Sixth Circuit stated:

> the court should look to the traditional state law indicia that are consistent with a support obligation. These include, but are not necessarily limited to, (1) a label such as alimony, support, or maintenance in the decree or agreement, (2) a direct payment to the former spouse, as opposed to the assumption of a third-party debt, and (3) payments that are contingent upon such events as death, remarriage, or eligibility for Social Security benefits.
>
> An award that is designated as support by the state court and that has the above indicia of a support obligation (along with any others that the state support statute considers) should be conclusively presumed to be a support obligation by the bankruptcy court. A non-debtor spouse who demonstrates that these indicia are present has satisfied his or her burden of proving that

the obligation constitutes support within the meaning of § 523, and is thus non-dischargeable.

*In re Sorah*, 163 F.3d 397, 401. Although here, only the first of the three of the above indicia are present, this decision makes it clear that the other two consideration are nonexclusive. And based upon further indicia, the Court, while finding it a close call, is convinced that the two obligations at issue in this matter are "actually in the nature" of support for purposes of § 523(a)(5)(B).

In *Luman v. Luman (In re Luman)*, 238 B.R. 697, 706 (Bankr.N.D.Ohio 1999), this Court set forth other considerations, cited to favorably by the Bankruptcy Appellate Panel for the Sixth Circuit,[2] that may be factored into the equation as to whether a debt is "actually in the nature" of support. Among these factors are: (1) the length of the marriage (2) the age, health and work skills of the parties; (3) adequacy of support absent the debt assumption; and (4) evidence of negotiations or other understandings as to the intended purposes of the assumption. When put into practice, the evidence presented in this case revealed that the Parties were married for almost 20 years; the Defendant's marketable job skills are greater, being a registered nurse; and in the absence of help from others, the Plaintiff, if required to pay the two marital debts, is unable to meet his own living expenses.

However, most noticeable is the last consideration: the Plaintiff testified, convincingly, that as to both the Fifth–Third auto lease and the Capital One credit-card account, the overall purpose and effect of the Parties' debt allocation in their separation agreement was to provide the Plaintiff with necessary support. In turn, this conforms to the relevant language of their

---

**2.** *Bailey v. Bailey (In re Bailey)*, 254 B.R. 901 (6th Cir. BAP 2000).

separation agreement, as set forth in Article 20, which states as follows:

> The parties agree that these provisions are made in lieu of spousal support ... which would otherwise be required for the appropriate and reasonable support of the parties ....
>
> It is the specific intention of the parties that the obligations of the parties, as set forth in the division of assets and liabilities in this agreement, are in the nature of alimony, maintenance and support for the parties ....
>
> (Pl.Ex. No. 1).

■ Although there also exists in Article 20 specific language regarding the nondischargeability of any debt in bankruptcy,—with such a provision being invalid in insolation as the general rule is that a party cannot contract away their rights in bankruptcy,[3]—there comes a point at which a court must give effect to the language the parties to a divorce voluntarily place in their separation agreement. And here, based upon the cumulative weight of all the considerations just explained, this point has been reached. As a result, this Court finds that, in accord with the first and second prongs of the test set forth in *Calhoun*, the obligations at issue in the matter are actually in the nature of support for purposes of § 523(a)(5)(B). In coming to this decision, it is also observed that unlike other exceptions to dischargeability, which are strictly construed against a creditor, doubts involving familial obligations are to be resolved in favor of a finding of nondischargeability. *Accord In re Crosswhite*, 148 F.3d 879, 882 (7th Cir. 1998). Before concluding, one final issue requires comment.

■ When, as here, a support obligation is found to exist, the *Calhoun* test also requires that a third level of inquiry be conducted whereby a court is to determine whether the amount of support is so excessive that it is manifestly unreasonable under the traditional concepts of support. 715 F.2d at 1110. In analyzing this element, the Court in *Calhoun* stated that: "If, at the time the debts were assumed, the assumption substantially exceeded a spouse's present and foreseeable ability to pay, the amount of the assumption which exceeded that ability should not be characterized as in the nature of support." *Id.* When set, however, against the Defendant's yearly income of approximately $36,000.00, the threshold of "manifestly unreasonable" is not even close to being met, with the total amount of the two obligations at issue totaling just over $10,000.00.

In summation, the Court holds that, as applied to 11 U.S.C. § 523(a)(5)(B), the Defendant's assumption of an automobile lease to Fifth–Third Bank and a Capital One credit-card account are "actually in the nature of support." And therefore, such debts are not subject to the bankruptcy discharge of 11 U.S.C. § 524. Having made this finding, the Court at this time declines to address the Plaintiff's cause of action under 11 U.S.C. § 523(a)(15). In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

***ORDERED*** that the obligation of the Defendant/Debtor, Teresa Thornton, to assume a Capital One credit-card account, as having arisen from and under the terms set forth in the Parties' Decree of Dissolution of Marriage (dated November 7, 2002, Case No. 02–DVC–00230, Putnam County Court of Common Pleas), be, and is here-

**3.** *Klingman v. Levinson*, 831 F.2d 1292, 1296 fn. 3 (7th Cir.1987).

by, determined to be a NONDIS-
CHARGEABLE DEBT.

It is **FURTHER ORDERED** that as to
the Defendant, Capital One Services, this
complaint is hereby DISMISSED.